# WILLIAM A. DANA *v.* THE JACKSON STREET WHARF COMPANY.

LAND GAINED FROM THE SEA IN THE HARBOR OF SAN FRANCISCO.—The doctrine that lands gained from the sea by washing up of sand or earth by little and little become the property of the owner of the land adjoining, does not apply to a marine increase of alluvion caused by a purpresture, by the erection of a wharf in a public harbor.

TITLE TO LAND BEYOND WATER FRONT OF SAN FRANCISCO.—The owner of a lot on the water front of San Francisco does not become the owner of land adjoining the lot and lying in the harbor beyond it, which land has been gained from the sea by the gradual accretion of sand and earth caused by a purpresture, by the erection of a wharf in the public harbor beyond it.

RIGHT TO BUILD WHARF IN BAY OF SAN FRANCISCO.—The owner of a lot on the water front of San Francisco has no right, without a license, to wharf out from his own land into the bay.

RIPARIAN PROPRIETOR ON NAVIGABLE WATER.—At common law a riparian proprietor on navigable water has no right to wharf out against his own land.

RIGHT TO SUE FOR PURPRESTURE IN BAY OF SAN FRANCISCO.—In case of purpresture or encroachment by the erection of a wharf in the Bay of San Francisco beyond the city front, the right to recover possession is in the people, and not in the owner of the land adjoining on the city front.

RIPARIAN PROPRIETOR.—The owner of a lot upon the water front of San Francisco, as established by statute, below low water mark, is not a "riparian proprietor" in the sense in which that term is used in the law of tide waters, for the water front of San Francisco is of statutory creation.

INCREASE OF LAND ON WATER FRONT OF SAN FRANCISCO.—In case of an increase of land by the accretion of alluvion in the bay on the water front of San Francisco, as established by statute, the owner of the lot adjacent has no right of entry thereon to the exclusion of the State, nor can he maintain ejectment against a stranger.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The premises sought to be recovered in this action lie east of and immediately adjoining the lot of plaintiff, and in the Harbor of San Francisco.    They were described in the complaint as follows : " Commencing on the south line of Jackson

street at the intersection of the old red line or city front; running thence along said red line at 44° 45′ east 149 feet, to the north line of Oregon street; thence north 81° 15′ east 60 feet, to the east side of old wharf; thence along the east side of old wharf, north 43° west, to south corner of office building 120 feet; thence along east side of office building north, 17° 30′ east, to south line of Jackson street; thence along south line of Jackson street, south 81° 15′ west, 99 feet 4 inches, to place of beginning." Plaintiff recovered judgment in the Court below, and defendant appealed.

The other facts are stated in the opinion of the Court.

*John B. Felton,* for Appellant.

*S. Heydenfeldt,* for Respondent, argued that the ownership of the State in the land under tide water was a qualified indispensable interest, and that the riparian proprietor's right to insensible accretion of land adjoining him, was positive and unqualified, and that the riparian proprietor had a right to wharf out in front of him, subject to the right of the State to abate the wharf as a nuisance, and that the plaintiff was such riparian proprietor; and in support of these propositions cited Angell on Tide Waters, 23—27; Id. 171; *Attorney-General* v. *Parrmeter,* 10 Price Exqr. 378; *Guy* v. *Herman,* 5 Cal. 73; *Nichols* v. *Lewis,* 15 Conn. 137; *East Haven* v. *Hemmingway,* 7 Conn. 186; *Wilson* v. *Inloes,* 11 Gill. & J. 351; *Bowman* v. *Wathen,* 2 McLean, 382; *Adams* v. *Frothingham,* 3 Mass. 352; *People* v. *Canal Appraisers,* 13 Wendell, 355; and *Cooper* v. *Smith,* 9 Sergt. & R. 26.

By the Court, SHAFTER, J.:

Ejectment. It appears by the findings that the plaintiff owns a water lot in San Francisco immediately abutting upon the water front, as established by the Act of March 5th, 1851, and that he has so owned the lot since 1855. That the defendants in that year entered upon the demanded premises and "made an erection thereon, annexed or attached thereto and

adjoining the water lot of the plaintiff, by driving a large number of piles, capping the same, and covering over the space with lumber and planking, so that said piece of land was entirely reclaimed from the water, and continued to fill up and be reclaimed; so that the same became and is totally unfit for any purpose of navigation, and is a permanent accretion by artificial and natural causes to the said water lot; and the defendant has occupied and used the same as a wharf and landing place for vessels and their cargoes, and continues to claim and occupy the same."

As to the lands gained from the sea by alluvion, *i. e.* by the washing up of sand or earth, so as in time to make *terra firma*, the law is held to be that if this gain be by little and little, by small and imperceptible degrees, it shall go to the owner of the land adjoining. (2 Bl. Com. 61.) The findings, however, make a case of purpresture, or encroachment, by the erection of a wharf in a public harbor, and not a case of marine increase by alluvion, within the definition of that term as fixed by the foregoing citation.

It is claimed, however, that the plaintiff is a riparian owner, and as such has a right to " wharf out " against his own land; and therefore that the wharf, though built by the defendant, inures to the plaintiff's advantage; and that the present right of entry thereon is vested in him and not in the people.

A riparian proprietor on navigable water has no right at common law to wharf out against his own land. By the common law any erection below high water mark, without license, is regarded as an encroachment and intrusion on the King's soil, which the King may demolish, seize or arrent at his pleasure. (Ang. on T. W. 199.) This shows decisively that in cases of purpresture the right of entry is not in the adjacent land owner but in the crown. It has been held in some of the States that the riparian proprietor owns the soil between high and low mater mark, or that he is at least so far interested in it that he can wharf out to the line of low water as against the people, if the wharf does not amount to a nuisance. But

these decisions are all of them based upon local legislation or local usage.

But further: We do not consider that the plaintiff is a *riparian* proprietor in the sense in which that term is used in the law of tide waters. He is not an owner upon the "shore," but upon a "water front" of statute creation. The water front established by the Act of March 5th, 1851, is what that Act has made it to be, and the rights of the plaintiff as the owner of a beach and water lot abutting upon it, exist only in subordination to that Act. It is provided in the fourth section of the Act that the boundary line described in the first section "shall be and remain a permanent water front of said city;" and special provision is made for keeping it free and clear of all obstructions. If the water front could be extended on the ground of marine increase by reliction or alluvion, or by any other kind of accretion, so that the owner of the water lot immediately adjacent would have a right of entry thereon to the exclusion of the State, then the water front, as limited by the red line of the Act, would or might be an ever-shifting instead of a permanent line.

There is another reason why rights, incident to ownership upon the shore of navigable waters, cannot be considered as incident to ownership upon the "water front" in the Harbor of San Francisco. "Shore" is the space between high and low water mark. Against the plaintiff's water lot there is no such space. The water front at that point is below low water mark, and there can be no riparian right to build a wharf or pier beyond it; and it follows that if a wharf should be built by a stranger below the line of low water, that the owner of the adjacent upland would have no right of entry upon it on which he could maintain ejectment. (*Dutton et al.* v. *Strong,* 1 Black. 23.)

The judgment is reversed, and the Court below is directed to enter judgment on the findings for the defendant.