[L. A. No. 18349.   In Bank.   Nov. 3, 1943.]

MIRAMAR   COMPANY   (a   Corporation),   Appellant,   v.
CITY OF SANTA BARBARA, Respondent.

Leland Crawford and Robert M. Jones for Appellant.

Hanna & Morton, Byron C. Hanna, James Kirby and David E. Hinckle as Amici Curiae on Behalf of Appellant.

Norris Montgomery, City Attorney, Heaney, Price, Postel & Parma and Francis Price for Respondent.

TRAYNOR, J.—Plaintiff owns littoral lands, adjacent to Miramar Bay and about two and one-half miles east of the city of Santa Barbara, upon which it operated cottages and a hotel known as Miramar Beach Hotel. On June 8, 1927, the city of Santa Barbara commenced the construction, about three miles west of plaintiff's property, of a permanent breakwater to extend from the shore bank approximately 2,500 feet into the Pacific Ocean.

The complaint alleged that since the littoral drift along the shore line is from west to east, the effect of the breakwater was to stop the natural flow of sand and to wash away the sand that was there. This action was continuous and progressive, always taking sand but never depositing any to replace that carried away. In time plaintiff's property was denuded of sand and covered by the sea so that the line of ordinary high tide was advanced. With the disappearance of the sand the hotel ceased to be a beach resort.

On May 15, 1937, seven years after the completion of the breakwater, plaintiff filed its verified claim for loss of prop-

erty with the Santa Barbara City Council for the sum of $750,000. The claim was disallowed and on October 4, 1939, plaintiff filed the present action on the rejected claim. Following the overruling of its demurrer the defendant filed an answer consisting of a general denial and six separate affirmative defenses. The case was tried before the court without a jury, pursuant to written stipulation of the parties, upon the issues created by the complaint and the 4th and 5th special defenses. The 4th special defense alleged that plaintiff did not comply with the provisions of Act 5149 ([Deering's Gen. Laws, 1937]; Stats. 1931, p. 2475) requiring the filing of a verified claim with the secretary of the city council within ninety days after the occurrence of the injury upon which the alleged cause of action is based. The 5th special defense was based upon an ordinance of defendant city limiting the time of the filing of certain claims for damages against the city to six months. The trial court made no finding on that defense but did find that the plaintiff failed to file its claim in compliance with the provisions of Act 5149. The court also held that the complaint did not state facts sufficient to constitute a cause of action. Plaintiff made a motion for a new trial, which was denied. The present appeal was then brought upon the judgment roll.

The complaint charges that "solely as the result of the erection and maintenance by defendant of said breakwater, and immediately and proximately caused thereby, the natural and normal action of the tides, currents, waves, and waters of the Pacific Ocean in that vicinity was changed, and the natural and normal drift of sand in a general easterly direction along the shore was intercepted by said breakwater, and by cutting off and depriving the said Miramar Beach of its natural and normal supply of sand, and causing the waters of the Pacific Ocean gradually, continuously and progressively to come upon, inundate and wash away and destroy during the five (5) years next preceding the filing of the claim attached hereto marked Exhibit 'A' all of the sandy beach, included in the real property described in Paragraph III hereof, . . . That said property so inundated, washed away and taken, consists of approximately all of the sandy beach commonly known as Miramar Beach, used in conjunction with said hotel. That defendant at all times knew and was put upon notice that the erection and maintenance of

said breakwater would inundate, wash away, destroy, damage and take the said property as herein described. . . ."

This case is not one where private property has been flooded or washed away by the diversion of currents independent of the stoppage of sand. The breakwater brought about a stoppage of the normal flow of sand that in turn led to the erosion of plaintiff's sandy beach and the flooding of plaintiff's property, and this sequence is the essence of the complaint. The complaint is attended by some confusion at the point where it states "and by cutting off and depriving the said Miramar Beach of its natural and normal supply of sand, and causing the waters of the Pacific Ocean gradually, continuously and progressively to come upon, inundate and wash away and destroy . . ." etc. This language, meaningless in itself because it is not coordinated with the rest of the sentence, nevertheless retains the association of stoppage of sand and erosion. The plaintiff itself at page 2 of its opening brief sets forth the cause and effect relationship between the two as the basis of its action:

"The littoral drift and current along the shore line involved is from west to east, and the effect of defendant's breakwater was to stop the normal and natural flow of sand, so that plaintiff's property, in the course of time, was denuded of sand, leaving rocks in place of the sands normally and naturally covering the shore of plaintiff's property.

"The loss of sand, by reason of the stoppage of littoral drift by defendant's breakwater, caused the waters of Miramar Bay to advance shoreward, advancing the ordinary high tide line until practically all of plaintiff's property had eroded away, and the water of Miramar Bay covered the property of plaintiff, formerly covered and protected by sand." (See also page 2 of plaintiff's petition for hearing by this court.)

A littoral owner may have a right as against an individual to the uninterrupted flow of sand carried to his land by the ocean currents in their natural state (see *Katenkamp v. Union Realty Co.*, 6 Cal.2d 765 [59 P.2d 473]; *Katenkamp v. Union Realty Co.*, 11 Cal.App.2d 63 [53 P.2d 387]), but he has no such right as against the state. Littoral rights must give way to any use of the tide lands and water flowing over them that serves the public right of navigation. (*Lewis Blue Point Oyster Cultivation Co.* v. *Briggs*, 229 U.S. 82

[33 S.Ct. 679, 57 L.Ed. 1083]; *Scranton* v. *Wheeler*, 179 U.S. 141, 163 [21 S.Ct. 48, 45 L.Ed. 126]; *United States* v. *Chandler-Dunbar W. P. Co.*, 229 U.S. 53, 62 [33 S.Ct. 667, 57 L.Ed. 1063]; *Greenleaf-Johnson Lbr. Co.* v. *Garrison*, 237 U.S. 251 [35 S.Ct. 551, 59 L.Ed. 939]; *Bedford* v. *United States*, 192 U.S. 217 [24 S.Ct. 238, 48 L.Ed. 414]; *Gibson* v. *United States*, 166 U.S. 269, 271 [17 S.Ct. 578, 41 L.Ed. 996].) ■ The federal government has the paramount right to regulate and control the improvement of navigable waters, but the states also may improve their navigable waters, subject to federal control. (*Henry Dalton & Sons Co.* v. *Oakland*, 168 Cal. 463, 466 [143 P. 721]; *People* v. *California Fish Co.*, 166 Cal. 576, 600 [138 P. 79]; *People* v. *Banning Co.*, 167 Cal. 643, 649 [140 P. 587]; *Oakland* v. *E. K. Wood Lumber Co.*, 211 Cal. 16 [292 P. 1076, 80 A.L.R. 379]; see 26 Cal.Jur. 308.) ■ Ownership of tidelands is governed by state law (*Weber* v. *State Harbor Commrs.*, 18 Wall. (85 U.S. 18) 57 [21 L.Ed. 798]; *Shively* v. *Bowlby*, 152 U.S. 1 [14 S.Ct. 548, 38 L.Ed. 331]; *Borax Consolidated* v. *City of Los Angeles*, 296 U.S. 10 [56 S.Ct. 23, 80 L.Ed. 9]), and in California "the state is the owner of all land below tide water. . . ." (Cal. Civ. Code, sec. 670.) ■ The littoral rights of an upland owner who owns no title to tidelands adjoining his property are subject to termination by whatever disposition of the tidelands the state chooses to make. (*Boone* v. *Kingsbury*, 206 Cal. 148 [273 P. 797]; *City of Newport Beach* v. *Fager*, 39 Cal.App.2d 23, 28 [102 P.2d 438].) ■ Since navigable waters are held by the state in trust for all the people, any conveyance of tidelands is taken by the grantee subject to the public right of navigation. The state retains "the right to enter upon such lands and make such erections thereon, or changes therein, as it may find necessary or advisable to adapt the premises for use in navigation and provide access thereto for that purpose, or in furtherance thereof." (*People* v. *California Fish Co.*, 166 Cal. 576, 588 [138 P. 79]; Cal. Const., art. XV, sec. 2; *City of Oakland* v. *Buteau*, 219 Cal. 745, 752 [29 P.2d 177]; *People* v. *Southern Pac. Co.*, 166 Cal. 627 [138 P. 103]; *People* v. *Banning Co.*, 167 Cal. 643 [140 P. 587]; *Patton* v. *Los Angeles*, 169 Cal. 521 [147 P. 141]; see Nichols, Eminent Domain (2d ed.) p. 419 et seq.)

■ The state may delegate to a city the power to make improvements in aid of navigation. (*City of Long Beach* v.

*Lisenby*, 175 Cal. 575 [166 P. 333]; *City of Oakland* v. *Buteau*, 219 Cal. 745, 753 [29 P.2d 177]; *City of Los Angeles* v. *Anderson*, 206 Cal. 662, 668 [275 P. 789]; *Patton* v. *City of Los Angeles*, 169 Cal. 521 [147 P. 141].) The plaintiff in the instant case does not question the right of the city of Santa Barbara to build the breakwater (see Cal. Stats. 1925, p. 181; Charter of the City of Santa Barbara, sec. 2(11); Cal. Stats. 1927, p. 2061) but alleges that it was constructed and maintained for the purpose of creating a harbor for pleasure yachts and fishing boats. ▇ The right of the public to use navigable waters, however, is not limited to any particular type of craft. Pleasure yachts and fishing boats are used for navigation and the state, or the city as its representative, can provide harborage for them as well as for merchant vessels and steamers.

▇ Whatever the effect of the breakwater upon the sand, the littoral owner obtained sand only because of the proximity of its land to the water. The relationship between the land and the water can shift as easily as the sand, and the state can alter it by a variety of improvements. It can even bar access to the water from the land. (*Henry Dalton & Sons Co.* v. *Oakland*, 168 Cal. 463, 468 [143 P. 721]; *Koyer* v. *Miner*, 172 Cal. 448 [156 P. 1023]; *Muchenberger* v. *City of Santa Monica*, 206 Cal. 635, 643 [275 P. 803]; *Boone* v. *Kingsbury*, 206 Cal. 148, 170 [273 P. 797]; *City of Oakland* v. *Buteau*, 219 Cal. 745 [29 P.2d 177]; *City of Newport Beach* v. *Fager*, 39 Cal.App.2d 23, 28 [102 P.2d 438]; see Nichols, Eminent Domain (2d ed.) p. 421.) Since it is free to set up a barrier that leaves the land without access to water, and therefore without access to the sand, it can clearly erect an improvement that merely checks the flow of sand to the land. There can thus be no vested right in such future accretions. (*Cohen* v. *United States*, 162 F. 364, 370-371; *Western Pac. R. Co.* v. *Southern Pac. Co.*, 151 F. 376, 398-400 [80 C.C.A. 606]; see 25 Cal.Jur. 1048.)

▇ Inevitably the washing away of sand in tidelands must advance the high-water mark if the owner of the uplands takes no steps to prevent that consequence. Plaintiff's insistence that the high-water mark preceding the erection of the breakwater must be maintained is in effect a claim that the state has no right to check the flow of sand and must maintain the tideland sand as a buffer for the upland sand.

Such a claim could not be recognized without creating a servitude in the tidelands inconsistent with the state's title and its right to erect improvements in the interest of navigation.

The improvement in question was erected at a distance of about three miles from plaintiff's land. The damage to the land resulted neither from direct invasion nor subjection to public use but as an incidental consequence of the construction of a breakwater. (*Southern Pac. Co.* v. *United States,* 58 Ct.Cl. 428, aff'd 266 U.S. 586 [45 S.Ct. 124, 69 L.Ed. 454]; cf. *Pumpelly* v. *Green Bay etc.,* 13 Wall. (80 U.S.) 166 [20 L.Ed. 557].) The erosion that changed the face of plaintiff's land was a gradual process in which the continuous ebb and flow of clear water over a period of years denuded plaintiff's land of the sand that had been deposited there in years past by the ebb and flow of sandy water. Such transformations are continually occurring up and down the thousand miles and more of California's seashore and reflect the changes in the action of the ocean resulting from natural causes and public improvements. ▆▆ Plaintiff's littoral right to sandy water, like its littoral right to access to the ocean, was derived entirely from the proximity of plaintiff's land to the ocean. It gave to plaintiff's land the advantage of sandy accretions. Nevertheless, the enjoyment of that advantage did not constitute a right to its perpetuation, for plaintiff's littoral rights were always subordinate to the state's right to improve navigation. The duration of the sandy accretions depended entirely upon the continuation of the littoral right, which from the beginning was subject to termination by the state. ▆▆ The withdrawal of the sandy accretions, constituting the damage to plaintiff's land, was an incidental consequence of the state's use of the public domain for a public interest that was at all times superior to private littoral rights. There has therefore been no taking or damaging of private property for public use within the meaning of article I, section 14, of the California Constitution. (*Henry Dalton & Sons Co.* v. *Oakland,* 168 Cal. 463, 466, 467, 468 [143 P. 721]; *People* v. *Banning Co.,* 167 Cal. 643 [140 P. 587]; *People* v. *Southern Pac. Co.,* 166 Cal. 627 [138 P. 103]; *Koyer* v. *Miner,* 172 Cal. 448 [156 P. 1023]; *Boone* v. *Kingsbury,* 206 Cal. 148 [273 P. 797]; *Cory* v. *City of Stockton,* 90 Cal.App. 634 [266 P. 552]; *City of Newport*

*Beach* v. *Fager*, 39 Cal.App.2d 23 [102 P.2d 438]; *Southern Pac.* v. *United States*, 58 Ct.Cl. 428, aff'd 266 U.S. 586 [45 S.Ct. 124, 69 L.Ed. 454]; *United States* v. *Chandler-Dunbar W. P. Co.*, 229 U.S. 53 [33 S.Ct. 667, 57 L.Ed. 1063]; *Bedford* v. *United States*, 192 U.S. 217 [24 S.Ct. 238, 48 L.Ed. 414]; *Gibson* v. *United States*, 166 U.S. 269 [17 S.Ct. 578, 41 L.Ed. 996]; *Scranton* v. *Wheeler*, 179 U.S. 141 [21 S.Ct. 48, 45 L.Ed. 126].)

The judgment is affirmed.

Gibson, C. J., and Edmonds, J., concurred.

SHENK, J.—I concur in the judgment of affirmance on the ground that the loss alleged to have been suffered by the plaintiff did not amount to a taking of private property for a public use as contemplated by our Constitution and that the timely filing of a claim under the Statutes of 1931, page 2475, was required.

By stipulation of the parties the trial was confined to the special defense which alleged that the action was barred for failure of the plaintiff to comply with the claim statute. This course was pursued for the obvious reason that if this defense were sustained the trial of the case otherwise on the merits would be obviated. The trial court found that a claim should have been filed pursuant to the statute, and that a claim had not so been filed. Judgment was rendered for the defendant on that ground. The question on the appeal, as I see it, is whether the trial court correctly concluded that the case was one which required the filing of a claim under the statute.

The plaintiff asserts its right to recovery for the destruction of the sandy beach by virtue of the provisions of section 14 of article I of the California Constitution providing that private property may not be taken or damaged for public use without compensation first having been paid to the owner, and notice to the defendant pursuant to Statutes of 1923, page 675.

The plaintiff alleges that solely as the result of the construction and maintenance of the breakwater, the normal course of the ocean currents was changed, causing the waters gradually, continuously and progressively to wash away its sandy beach three miles below the breakwater.

To state a cause of action under the constitutional provision it is necessary to allege a taking or a damaging of the plaintiff's property for a public use. The plaintiff attempts to support its theory or conclusion that the loss was a taking for public use upon the failure of the ocean currents to carry a compensating load of sand to its beach. The mere statement of the contention of the plaintiff that the city of Santa Barbara was thus taking the far off sandy beach for a public use is a demonstration of the futility of the claim. What public use the city was or is to make of that beach is not disclosed, and the assertion that the construction and maintenance of the breakwater has resulted in such a taking is a mere conclusion which is negatived by the other allegations in the complaint.

The general rule is that acts done, as here, in the proper exercise of governmental powers and not directly encroaching upon private property, though their consequences may impair its use, are not a taking within the meaning of the constitutional provision. (See *Northern Transportation Co.* v. *Chicago,* 99 U.S. 635, 642 [25 L.Ed. 336]; *Gibson* v. *United States,* 166 U.S. 269 [17 S.Ct. 578, 41 L.Ed. 996]; *Scranton* v. *Wheeler,* 179 U.S. 141 [21 S.Ct. 48, 45 L.Ed. 126]; *Bedford* v. *United States,* 192 U.S. 217 [24 S.Ct. 238, 48 L.Ed. 414]; *Sanguinetti* v. *United States,* 264 U.S. 146 [44 S.Ct. 264, 68 L.Ed. 608]; *Franklin* v. *United States,* 101 F.2d 459; *Goodman* v. *United States,* 113 F.2d 914; *Green* v. *State,* 73 Cal. 29 [11 P. 602, 14 P. 610]; *Lamb* v. *Reclamation Dist. No. 108,* 73 Cal. 125 [14 P. 625, 2 Am.St.Rep. 775].) Cases in which damage has been held to be a taking involved a direct physical invasion or encroachment. (See *Pumpelly* v. *Green Bay etc. Co.,* 13 Wall. (80 U.S.) 166 [20 L.Ed. 557]; *United States* v. *Lynah,* 188 U.S. 445 [23 S.Ct. 349, 47 L.Ed. 539]; *United States* v. *Cress,* 243 U.S. 316 [37 S.Ct. 380, 61 L.Ed. 746]; *United States* v. *Wabasha-Nelson Bridge Co.,* 83 F.2d 852; *Carpenter* v. *Board of Commissioners,* 56 Minn. 513 [58 N.W. 295, 45 Am.St.Rep. 494]; *Morrison* v. *Clackamas County,* 141 Ore. 564 [18 P.2d 814].) Thus decisions permitting recovery under the Fifth Amendment of the United States Constitution providing for compensation for a taking only, are confined to cases involving a direct physical invasion of or encroachment upon the property. The doctrine of taking under the Fifth Amendment has never been ex-

tended beyond the rule stated, and certainly there is no necessity for doing so under a constitutional provision which provides compensation for both taking and damaging.

It is obvious from the foregoing cited cases and from a consideration of the provision of the state Constitution that a taking of property is not effected unless the property is directly utilized in the public improvement. Damage which is not caused by a direct invasion or utilization of the private property in the improvement is not a taking. The plaintiff has not alleged, and apparently cannot allege, facts from which it may properly be concluded that there was a direct physical invasion of or encroachment upon its property resulting from the construction of the breakwater. The allegations of the complaint fall far short of stating a cause of action for a taking of private property for public use. It has been held directly that damage such as is here alleged is indirect and consequential and therefore not a taking. (*Bedford* v. *United States, Franklin* v. *United States, supra.*) Whatever loss the plaintiff sustained, if compensable at all, was for damages. The question then remains whether, on account of such loss, a timely claim was required to be filed under the 1931 statute.

It is settled in this state that a cause of action for either a taking or damaging of private property for public use under the constitutional provision is subject to the operation of a claim statute or charter provision, provided the terms thereof are broad enough to embrace it. (*Rose* v. *State of California,* 19 Cal.2d 713, 725 [123 P.2d 505] ; *Powers Farms, Inc.* v. *Consolidated Irr. Dist.,* 19 Cal.2d 123, 126 [119 P.2d 717], citing numerous cases; *Davis* v. *East Contra Costa Irr. Dist.,* 19 Cal.2d 140 [119 P.2d 727] ; *Crescent Wharf & Warehouse Co.* v. *Los Angeles,* 207 Cal. 430 [278 P. 1028] ; *Los Angeles Athletic Club* v. *Long Beach,* 128 Cal.App. 427 [17 P.2d 1061].) The statute of 1931 provides that a claim for damages to property ''as a result of the dangerous or defective condition of any public . . . works,'' must be filed within the time specified ''after such accident has occurred.'' Concededly this statute is not broad enough to include a claim for taking private property for public use; but the statute seems to be broad enough to cover all damage ensuing from the construction or maintenance of public works which in its essence may not be deemed a taking. It was

decided in the cases of *Powers Farms, Inc.* v. *Consoldiated Irr. Dist.* and *Davis* v. *East Contra Costa Irr. Dist., supra,* that liability for dangerous or defective condition of property of the district covered a general liability, including a liability accruing by virtue of the exercise of the power of eminent domain, without reference to negligence. The general liability having thus been provided for may not be relegated to the field of tort liability alone by the addition in the statute of the words "after such accident has occurred." The quoted words refer to the time when the claim must be filed, and do not limit established general liability. The foregoing cited cases likewise establish that damage is caused by the dangerous or defective condition of public works, within the meaning of the statute, if the condition of the public works is dangerous to the plaintiff's property without reference to negligence.

It follows that, since the alleged cause of action is not for a taking of private property as distinguished from damage thereto, a timely claim should have been filed pursuant to the statute, and the trial court's findings and judgment are correct. It is not necessary to express an opinion on whether any damage alleged is merely *damnum absque injuria.*

CARTER, J.—I dissent. It appears from plaintiff's complaint that it is the owner of littoral lands adjacent to Miramar Bay, an inlet of the Pacific Ocean, and lying 2½ miles east of defendant city of Santa Barbara. It operated a hotel business on its lands known as the Miramar Beach Hotel. A portion of plaintiff's property consists of a beach. On June 8, 1927, defendant commenced, and on June 30, 1930, completed, and has since maintained, a breakwater extending from a point on the shore about three miles west of plaintiff's property into the ocean, a distance of 2,500 feet. The complaint alleges: ". . . that said breakwater was constructed and is maintained solely for the purpose of creating a harbor for pleasure yachts and fishing boats, and for the purpose of rendering for defendant's profit, anchorage space in the harbor thus created, protected and improved; that solely as the result of the erection and maintenance by defendant of said breakwater, and immediately and proximately caused thereby, the natural and *normal action of the tides, currents, waves, and waters of the Pacific Ocean in that vicinity was*

*changed,* and the natural and normal drift of sand in a general easterly direction along the shore was intercepted by said breakwater, and by cutting off and depriving the said Miramar Beach of its natural and normal supply of sand, *and causing the waters of the Pacific Ocean gradually, continuously and progressively to come upon, inundate and wash away* and destroy during the five (5) years next preceding the filing of the claim attached hereto marked Exhibit 'A,' all of the sandy beach, included in the real property described in Paragraph III hereof, said real property being described as follows, to-wit: . . . That said property so *inundated, washed away and taken,* consists of approximately all of the sandy beach commonly known as the Miramar Beach, used in conjunction with said hotel. *That defendant at all times knew and was put upon notice that the erection and maintenance of said breakwater would inundate, wash away, destroy, damage and take the said property as herein described."* (Emphasis added.)

It is conceded by both parties that if plaintiff has stated a cause of action in its complaint it must be based upon the constitutional provision that private property shall not be taken or damaged for a public use without the payment of just compensation. (Cal. Const., art. I, sec. 14.) In support of its contention that plaintiff cannot recover thereunder defendant invokes its right as a political subdivision and agency of the state to maintain the breakwater pursuant to its power of control over navigation. Liberally interpreted, the complaint may be said to allege that the breakwater has caused two things, namely, the washing away of the sand on the beach on plaintiff's property by reason of the resulting change in the currents and the prevention of the replacement of the sand on the beach by sand bearing water. *It must be assumed that said beach is upland property,* that is, land above mean high tide, inasmuch as it is alleged that the beach is "included in that real property" particularly described in the complaint. Even assuming that the two conditions occurred simultaneously and are inseparable, the result is the same. If the complaint be interpreted to mean that under normal conditions the action of the current and the waters washed away the beach, but at the same time repaired the damage by depositing other sand in its place which is carried by the water, the end result is the same. If the breakwater

so changed the action of the water that after its construction the sole effect was a washing away of the sand with no compensating deposit, the condition created is not substantially different than a diversion of the currents with a result that the upland was washed away. It is not a case of being deprived merely of future accretions where the abutting property owner is depending upon the possibility that they might increase the area of his land. Rather, it is simply the loss of his upland which he already possesses by the change in the action of the water. Hence, we have a case where a littoral owner's upland property is being taken from him as the result of the maintenance of the breakwater which changes the action of the water.

A public agency may not take a littoral owner's upland property by flooding, erosion or otherwise in the exercise of its control over navigation or in exercise of any other power without the payment of just compensation. (*United States* v. *Lynah,* 188 U.S. 445 [23 S.Ct. 349, 47 L.Ed. 539]; *Pumpelly* v. *Green Bay etc. Co.,* 13 Wall. (80 U.S.) 166 [20 L.Ed. 557]; *Carpenter* v. *Board of Commrs.,* 56 Minn. 513 [58 N.W. 295, 45 Am.St.Rep. 494]; *Goodman* v. *United States,* 113 F.2d 914; *United States* v. *Wabasha-Nelson Bridge Co.,* 83 F.2d 852; *Mashburn* v. *St. Joe Improvement Co.,* 19 Idaho 30 [113 P. 92, 35 L.R.A.N.S. 824]; 1 Nichols on Eminent Domain, sec. 138; 18 Am.Jur., Eminent Domain, secs. 163, 165; *United States* v. *Chicago, B. & Q. R. Co.,* 82 F. 2d 131, Cert. denied 298 U.S. 689 [56 S.Ct. 957, 80 L.Ed. 1408]; *Conger* v. *Pierce County,* 116 Wash. 27 [198 P. 377, 18 A.L.R. 393]; see *United States* v. *Great Falls Mfg. Co.,* 112 U.S. 645 [5 S.Ct. 306, 28 L.Ed. 846]; *Monongahela Navigation Co.* v. *United States,* 148 U.S. 312 [13 S.Ct. 622, 37 L.Ed. 463]; *United States* v. *Cress,* 243 U.S. 316 [37 S.Ct. 380, 61 L.Ed. 746]; *United States* v. *Chicago, M., St. P. & P. R. Co.,* 312 U.S. 592 [61 S.Ct. 772, 85 L.Ed. 1064]; *United States* v. *Appalachian Elec. Power Co.,* 311 U.S. 377, 427 [61 S.Ct. 291, 85 L.Ed. 243]; *Los Angeles Athletic Club* v. *Long Beach,* 128 Cal.App. 427, 432 [17 P.2d 1061]; *St. Regis Paper Co.* v. *New Hampshire Water R. Board,* —— N.H. —— [26 A.2d 832, 838].)

Generally the public agency is required to pay just compensation where a public improvement in a navigable stream has caused the flooding or erosion of his property. (*Morri-*

*son* v. *Clackamas County,* 141 Ore. 564 [18 P.2d 814]; *City of Los Angeles* v. *Aitken,* 10 Cal.App.2d 460 [52 P.2d 585].)

There is confusion on the subject in the decisions of the United States Supreme Court resulting from the giving of a too narrow interpretation to the words "taking" and "property" as used in the Fifth Amendment to the Constitution of the United States which requires the payment of compensation for the taking of property, the view being taken in some cases that real property includes only the actual physical land or soil itself rather than a bundle of legal rights, a concept embracing many factors other than the physical land. (See 41 Yale L.J. 221; 50 Yale L.J. 668; 52 Harv.L. Rev. 1176; 25 Va.L.Rev. 854.) The result has been such cases as *Bedford* v. *United States,* 192 U.S. 217 [24 S.Ct. 238, 48 L.Ed. 414]; *Franklin* v. *United States,* 101 F.2d 459; *Scranton* v. *Wheeler,* 179 U.S. 141 [21 S.Ct. 48, 45 L.Ed. 126]; and *Gibson* v. *United States,* 166 U.S. 269 [17 S.Ct. 578, 41 L.Ed. 996]. Hence, taking has been said to mean an actual dispossession or ouster from the land itself or title thereto or a removal of it.

It may be true that ordinarily the state is the owner of tidelands along the seashore. (26 Cal.Jur. 315 et seq.) The *littoral* rights of a person owning property on navigable waters are subject to the superior control of the state over navigation. Those rights embrace the right of access which may be taken under the power over navigation without the payment of compensation. (*Koyer* v. *Miner,* 172 Cal. 448 [156 P. 1023]; *Henry Dalton & Sons Co.* v. *Oakland,* 168 Cal. 463 [143 P. 721]; *Patton* v. *City of Los Angeles,* 169 Cal. 521 [147 P. 141]; *Muchenberger* v. *City of Santa Monica,* 206 Cal. 635 [275 P. 803]; *Boone* v. *Kingsbury,* 206 Cal. 148 [273 P. 797]; *City of Oakland* v. *Buteau,* 219 Cal. 745 [29 P.2d 177]; *City of Newport Beach* v. *Fager,* 39 Cal. App.2d 23 [102 P.2d 438]; 26 Cal.Jur. 301.) It may be that the abutting owner has no vested right in *future* accretions, that is, possible future additions to his land, as against the state. (*Cohen* v. *United States,* 162 F. 364; *Western Pac. Ry. Co.* v. *Southern Pac. Co.,* 151 F. 376 [80 C.C.A. 606].) But certainly he has a vested right in past accretions, they having then become his upland, which may not be taken without the payment of compensation. (See *Strand Improvement Co.* v. *Long Beach,* 173 Cal. 765 [161 P. 975]; *City of Los*

*Angeles* v. *Anderson,* 206 Cal. 662. [275 P. 789]; *Dana* v. *Jackson Street Wharf Co.,* 31 Cal. 118 [89 Am.Dec. 164].)

Most of the cases refusing compensation were instances in which the public agency was exercising its right to the *bed* of the tide lands or was interfering solely with *littoral* rights which, as we have seen, may be subject to the power of navigation. In *Gibson* v. *United States, supra,* the improvement of a navigable stream consisted of a dike which resulted in the landowner losing *access and landing* privileges, an element of his *littoral* right. In *Scranton* v. *Wheeler, supra,* the improvement consisted of a pier built on the submerged lands, and the interference was with landowner's right of access. *Lewis Blue Point Oyster Cultivation Co.* v. *Briggs,* 229 U.S. 82 [33 S.Ct. 679, 57 L.Ed. 1083], involved the deepening of a channel lying under navigable waters, while the owner was merely using the bed of the channel to propagate oysters pursuant to a state license. In none of those cases was there involved the littoral owner's rights in the upland. Similar comment is applicable to the cases of *United States* v. *Chandler-Dunbar W. P. Co.,* 229 U.S. 53 [33 S.Ct. 667, 57 L.Ed. 1063]; *Greenleaf-Johnson Lumber Co.* v. *Garrison,* 237 U.S. 251 [35 S.Ct. 551, 59 L.Ed. 939]; *Henry Dalton & Sons Co.* v. *Oakland, supra; People* v. *California Fish Co.,* 166 Cal. 576 [138 P. 79]; *People* v. *Banning Co.,* 167 Cal. 643 [140 P. 587]; *Oakland* v. *E. K. Wood Lumber Co.,* 211 Cal. 16 [292 P. 1076, 80 A.L.R. 379]; *Boone* v. *Kingsbury, supra; City of Newport Beach* v. *Fager, supra; City of Oakland* v. *Buteau, supra; People* v. *Southern Pac. R. R. Co.,* 169 Cal. 537 [147 P. 274]; and *Patton* v. *City of Los Angeles, supra;* and *County Sanitation Dist. No. 2* v. *Averill,* 8 Cal.App.2d 556 [47 P.2d 786].

The cases of *Green* v. *Swift,* 47 Cal. 536; *Lamb* v. *Reclamation Dist. No. 108,* 73 Cal. 125 [14 P. 625, 2 Am.St.Rep. 775]; *Green* v. *State,* 73 Cal. 29 [11 P. 602, 14 P. 610]; and *Gray* v. *Reclamation District No. 1500,* 174 Cal. 622 [163 P. 1024], are relied upon by defendant in support of its contention that any damage suffered by plaintiff as the result of the construction of the breakwater is *damnum absque injuria.* These cases are clearly distinguishable from the case at bar. They were all actions for damages brought against the state or a state agency to recover damages alleged to have been suffered to real property as the result of the construction or maintenance of a public improvement

designed to prevent future damage to large areas of the state as the result of seasonal flooding. In each of these cases this court stated that it could not be said that any of plaintiff's property had been taken in the construction or maintenance of the public improvement, but that the damages claimed by plaintiff were indirect and consequential and in the Gray case that they were prospective and temporary. All of these cases except the Gray case arose prior to the amendment to section 14 of article I of the Constitution of California permitting recovery for the damaging as distinguished from the taking of private property for public use. In the case of *Green* v. *State, supra,* the court said at page 35:

"The damage is plainly not the natural consequence of the work, which could and ought to have been anticipated and expected as the result. It was remote and consequential,— a purely incidental and unexpected effect. There was not enforced occupation of the property or interference with it. The owner was left in full possession, and there was done to the land or left upon it nothing to obstruct its use."

The discussion in *Cory* v. *City of Stockton,* 90 Cal.App. 634 [266 P. 552], is dictum, and when the same issue was previously before the Supreme Court of the United States in *Sanguinetti* v. *United States,* 264 U.S. 146 [44 S.Ct. 264, 68 L.Ed. 608], that court merely determined that the damage was only temporary and no permanent injury was inflicted.

Police power generally, that is, other than in the sense of the power over navigation, may not be invoked to escape the payment of compensation. It was said by this court in *Rose* v. *State of California,* 19 Cal.2d 713, 730 [123 P.2d 505]:

"Generally, it may be said that police power operates in the field of regulation, except possibly in some cases of emergency such as conflagration or flood when private property may be temporarily used or damaged or even destroyed to prevent loss of life or to protect the remaining property of an entire locality. There is obviously no element of regulation involved in the case at bar, and no suggestion of anything in the nature of an emergency. The damage to plaintiff's property here involved was the result of a public improvement constructed by the state in the exercise of its power of eminent domain." (See, also, *City of Los Angeles* v. *Aitken,* 10 Cal.App.2d 460, 471 [52 P.2d 585]; *Gin S. Chow* v. *City of Santa Barbara,* 217 Cal. 673, 701 [22 P. 2d 5].) In the case of *O'Hara* v. *Los Angeles County Flood*

*etc. District,* 19 Cal.2d 61 [119 P.2d 23], a public emergency resulting in the flooding of great areas of land was involved. There is no such degree of public necessity in the instant case.

It follows that the complaint in the instant case states a cause of action. The beach was owned by plaintiff and was a part of its upland. That upland was washed away and inundated. It is clear that there was an actual taking of plaintiff's property in even the more narrow sense. It is so alleged in the complaint. Plaintiff's beach, the actual soil itself is lost. The point of mean high tide is thus raised and the land that was formerly a privately owned beach becomes tide lands and is owned by the state. The title to a portion of plaintiff's property is thus lost as the result of the construction and maintenance of a public improvement, namely the breakwater.

Turning to the opinion of Mr. Justice Traynor, there appears the statement: "Inevitably the washing away of sand in tidelands must advance the high-water mark if the owner of the uplands takes no steps to prevent that consequence. Plaintiff's insistence that the high-water mark preceding the erection of the breakwater must be maintained is in effect a claim that the state has no right to check the flow of sand and must maintain the tideland sand as a buffer for the upland sand. Such a claim could not be recognized without creating a servitude in the tidelands inconsistent with the state's title and its right to erect improvements in the interest of navigation." First, that assertion is contrary to the complaint, which expressly alleges that the breakwater caused plaintiff's *upland* to be *washed away* and *inundated.* Second, even if it be assumed that the change in the current caused the loss of a compensating sand deposit and hence the flooding of the upland, it is a technicality without substance to argue that the plaintiff's upland has not been taken. No servitude would be imposed upon the state's title to the tidelands. To allow recovery would be nothing more than protecting plaintiff's upland from being washed away. It is not a case of plaintiff claiming a right to have the *area* of its land *increased* by the action of water, but rather that its land shall not be decreased by the change caused by the breakwater. The essential point is that the breakwater causes the loss of formerly existing upland. The opinion is based primarily on the proposition that littoral rights must give way to either state or federal exercise of control over navigation; that the owner has no

right to compensation for the loss of the sand deposited on his upland, and that there was no invasion of his property right. This ignores the *washing away* of the sand already there as the result of a change in the ocean currents caused by the breakwater.

None of the authorities relied upon supports the proposition that the state or other public agency is immune from liability for damages under the eminent domain provisions of the Constitution caused by structures erected in the course of the improvement or regulation of navigation. *Lewis Blue Point Oyster C. Co.* v. *Briggs,* 229 U.S. 82 [33 S.Ct. 679, 57 L.Ed. 1083], involved the deepening of the *channel* lying under navigable waters, while the property owner was merely using it to cultivate oysters with the state's consent. It was not a question of invading or damaging property other than tidelands. The court was concerned solely with lands submerged by navigable waters. The court there quoted with approval the following excerpt from *Scranton* v. *Wheeler,* 179 U.S. 141 [21 S.Ct. 48, 45 L.Ed. 126] (also cited in Justice Traynor's opinion) recognizing the distinction between upland and submerged tidelands: " 'Whatever the nature of the interest of a riparian owner in the *submerged* lands in front of his upland bordering on a public navigable water, his title is not as full and complete as his title to *fast land which has no* direct connection with the navigation of such water. It is a qualified title, a bare technical title, not at his absolute disposal, *as is his upland,* but to be held at all times subordinate to such use of the submerged lands and of the waters flowing over them as may be consistent with or demanded by the public right of navigation.' " The same comment is applicable to the following cases: *United States* v. *Chandler-Dunbar Water Power Co.,* 229 U.S. 53 [33 S.Ct. 667, 57 L.Ed. 1063]; *Greenleaf-Johnson Lumber Co.* v. *Garrison,* 237 U.S. 251 [35 S.Ct. 551, 59 L.Ed. 939]; *Gibson* v. *United States,* 166 U.S. 269 [17 S.Ct. 578, 41 L.Ed. 996]; *Henry Dalton & Sons Co.* v. *Oakland,* 168 Cal. 463 [143 P. 721]; *People* v. *California Fish Co.,* 166 Cal. 576 [138 P. 79]; *People* v. *Banning Co.,* 167 Cal. 643 [140 P. 587]; *Oakland* v. *E. K. Wood Lumber Co.,* 211 Cal. 16 [292 P. 1076, 80 A.L.R. 379]; *Boone* v. *Kingsbury,* 206 Cal. 148 [273 P. 797]; *City of Newport Beach* v. *Fager,* 39 Cal.App.2d 23 [102 P.2d 438]; *City of Oakland* v. *Buteau,* 219 Cal. 745 [29 P. 177]; *People* v. *Southern Pac. R. R. Co.,* 166 Cal. 627

[138 P. 103], and *Patton* v. *City of Los Angeles,* 169 Cal. 521 [147 P. 141].

It is reasoned that because the public agency may in the interests of navigation deprive an owner of land on navigable waters of access thereto, it may erect structures which prevent accretions. Assuming that to be true, there still is the question of diverting the currents of the ocean in such a fashion *as to wash away plaintiff's land.* The right to have his land free from the diversion of currents with the result of the washing away of his land is not a part of his littoral rights nor dependent thereon. All the cases cited in the opinion involve an interference with the owner's littoral rights. *Not one of them,* except as hereinafter mentioned, involves the washing away or flooding of the upland land as a result of the diversion or obstruction of the current of a navigable stream. The exceptions above mentioned are *Bedford* v. *United States,* 192 U.S. 217 [24 S.Ct. 238, 48 L.Ed. 414], and *Gibson* v. *United States, supra.* Those cases were based upon the proposition that there could be no compensation where there was merely a *damaging* as distinguished from a *taking,* that is a *consequential damage.* (See *United States* v. *Cress,* 243 U.S. 316, 329 [37 S.Ct. 380, 61 L.Ed. 746].) This same thought is stated in Justice Traynor's opinion, where it is said: "The damage to the land resulted neither from direct invasion nor subjection to public use but as an incidental consequence of the construction of a breakwater." That is not the law in California, and our state Constitution provides that compensation must be paid where there is a *damaging* or taking. (Cal. Const., art. I, sec. 14.) It is said in 10 Cal.Jur. 335: "Under the present constitution by which compensation is recoverable where property is 'damaged,' the owner is entitled to compensation even though there has been no actual taking and the only injury suffered is indirect and consequential and for which damage he had no right of recovery at the common law."

It is said in *Goodman* v. *United States, supra,* at page 917: ". . . and the government's right to improve such rivers in aid of navigation is paramount to the rights of riparian owners in the beds of all navigable streams. *Pike Rapids Power Co.* v. *Minneapolis, St. P. & S. S. M. R. Co.,* (8 Cir.), 99 F.2d 902, 909. But the government may not for the

purpose of aiding navigation permanently convert to the public use, by means of dams and other structures, the land of the riparian owner above the mean high-water line without just compensation. *Pumpelly* v. *Green Bay Co.*, 13 Wall. [80 U.S.] 166, 20 L.Ed. 557; *United States* v. *Lynah*, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; *United States* v. *Cress*, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; *Willink* v. *United States*, 240 U.S. 572, 580, 36 S.Ct. 422, 60 L.Ed. 808; *Union Bridge Co.* v. *United States*, 204 U.S. 364, 390, 27 S.Ct. 367, 51 L.Ed. 523; *Shively* v. *Bowlby*, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331.''

It is said in *United States* v. *Cress, supra,* at page 319: ''The States have authority to establish for themselves such rules of property as they may deem expedient with respect to the streams of water within their borders both navigable and non-navigable, and the ownership of the lands forming their beds and banks . . . , subject, however, in the case of navigable streams, to the paramount authority of Congress to control the navigation so far as may be necessary for the regulation of commerce among the States and with foreign nations . . .; the exercise of this authority *being subject,* in its turn, to the inhibition of the Fifth Amendment against the taking of private property for public use without just compensation. . . .''

It is said in Nichols on Eminent Domain, volume 1, section 138, at page 417: ''Even the public right to improve navigation, which is paramount to all private rights in the waters or bed of a navigable watercourse, cannot be exercised in such a way as to 'take' land above high water mark without payment of compensation. In improving navigable streams the public authorities cannot trespass upon the lands of riparian proprietors, cut timber or *dig away the banks.* It is of course well settled that, apart from the peculiar doctrine already noted in respect to the mill acts, the construction of a dam raising the waters of a stream to such an extent as to permanently flood riparian land naturally dry is a 'taking' in the constitutional sense, and no exception to this rule is made when the level of the stream is raised for the purpose of making navigation more safe and convenient. In such case the owners of riparian land that is thereby flooded are constitutionally entitled to compensation. The owner of the upland bordering upon a watercourse has however no greater protection from injury resulting from the construction of

public improvements than the owner of any other land, and he is not entitled to compensation if his land is merely damaged as the result of the improvement of the watercourse, if it is not taken in the constitutional sense. Thus the erection of a dam for the purpose of improving navigation, which increases the liability of riparian land to overflow in time of freshets but does not keep it permanently submerged, gives the owner of such land no right to compensation. When the natural *consequence of the erection of structures upon one bank of the stream, or in its bed, will be to deflect the current* upon the other bank and to gradually wash it away, it is held by the federal and by some of the state courts that such injury is not a taking, since the owner might protect his land by piles or a sea-wall. In other states however it has been held that such injury constitutes a taking, and *at all events, when the constitution provides that property cannot be damaged without compensation, such an injury is within the protection of the constitution."* (Emphasis added.)

In its answer to plaintiff's complaint defendant pleaded as its fourth separate defense that plaintiff's cause of action is barred by its failure to file a claim with defendant within ninety days after the occurrence of the damage as required by California Statutes of 1931, page 2475, Deering's General Laws, Act No. 5149, and as a fifth separate defense it pleaded an ordinance of the city of Santa Barbara providing that in actions for damages against the city a claim must be filed within six months unless a shorter period of time is otherwise provided by law.

Pursuant to stipulation between the parties the issues raised by these defenses were tried by the trial court and a judgment rendered in favor of defendant based upon the fourth defense above mentioned. No other issues were tried. The judgment further determined "that plaintiff's complaint does not state facts sufficient to constitute a cause of action, . . . that plaintiff is not entitled to any relief herein," and "that plaintiff take nothing by this action and that the same be dismissed."

From what I have said in the foregoing opinion, it is obvious that the complaint states a cause of action in inverse condemnation for compensation for the portion of its property taken as the result of the construction of the improvement, and also for severance damages to the property not taken.

The material part of the above-mentioned claim statute relied upon by defendant reads: "Whenever it is claimed that any person has been injured or any property damaged as a result of the *dangerous or defective condition* of any public street, highway, building, park, grounds, works or or property, a verified claim for damages shall be presented in writing and filed with the clerk or secretary of the legislative body of the municipality, county, city and county, or school district, as the case may be, within ninety days after such accident has occurred. Such claim shall specify the name and address of the claimant, the date and place of the accident and the extent of the injuries or damages received." (Emphasis added.) The claim statute involved in *Powers Farms, Inc.* v. *Consolidated Irr. Dist.*, 19 Cal.2d 123 [119 P.2d 717], was phrased practically the same as the one here invoked. It was there held that a claim need not be filed where there is a taking of the property under the eminent domain provision of the Constitution. It has been shown that there was a taking in the instant case. Furthermore, it was held in the Powers case that there must be a dangerous or defective condition in the improvement before the statute applies. The statute here involved also refers only to damage to property as a result of a dangerous or defective condition. In the instant case there is no allegation that the breakwater was in any manner dangerous or defective, and it does not appear to have been in such condition. In the Powers case the seepage from a canal was caused by the dangerous and defective condition of the canal. (See, also, *Davis* v. *East Contra Costa Irr. Dist.*, 19 Cal.2d 140 [119 P.2d 727].) The reason given in the Powers case for applying the claim statute where there was a damaging, but not where there was a taking, is that in the latter case the agency constructing the improvement *knew* it was *taking* the property and therefore required no notice. In the instant case it is alleged that defendant knew that the breakwater would result in the taking of plaintiff's beach.

It is conceded by respondent that the 1931 claim statute pleaded as its fourth defense, and not the ordinance pleaded as its fifth defense, must be relied upon in support of the judgment. From what I have said in the foregoing opinion, said statute is not applicable to the case at bar, and the or-

dinance, which is no broader than the statute, is likewise not applicable.

I am unable to follow the argument of Mr. Justice Shenk in his concurring opinion in this case. He concedes that the claim statute upon which defendant relies applies only to a damage resulting from a dangerous and defective condition of public property. He does not say that the breakwater in question is dangerous or defective; in fact, he cannot fairly say so, because there is no allegation or finding to that effect. Such being the case there is no basis whatever for his conclusion that the claim statute is applicable and that plaintiff's action is barred for its failure to file a claim.

Mr. Justice Shenk states: "The general liability having thus been provided for may not be relegated to the field of tort liability alone by the addition in the statute of the words 'after such accident has occurred.' The quoted words refer to the time when the claim must be filed, and do not limit established general liability. The foregoing cited cases likewise establish that damage is caused by the dangerous or defective condition of public works, within the meaning of the statute, if the condition of the public works is dangerous to the plaintiff's property *without reference to negligence."* (Emphasis added.) That conclusion is clearly erroneous. The claim statute is clearly related to and contemplates *only* those liabilities created by the 1923 Public Liability Act (Stats. 1923, p. 675; Deering's Gen. Laws, 1937, Act 5619) or for liability arising out of a proprietary function. (*Helbach v. City of Long Beach,* 50 Cal.App.2d 242, 244 [123 P.2d 62]). The wording of the two acts is identical. In the 1923 act liability is imposed for "injuries to persons and property resulting from the dangerous or *defective* condition" of public works. It was said in *Johnson v. City of Glendale,* 12 Cal.App.2d 389, 393 [55 P.2d 580]: "The act of 1931, in so far as it requires the presentation of claims within ninety days after the happening of an accident, *merely prescribes rules of procedure for the enforcement of claims arising under the 1923 act, no such rules having been prescribed by that act."* (Emphasis added.) The liability under the 1923 act does not exist unless the agency has *notice* of the dangerous or defective condition. The liability is imposed *solely for negligence.* If the 1931 claim act applies to inverse condemnation cases where *no notice* is necessary but still calls those conditions dangerous or defective, then there **is**

liability for a dangerous or defective condition regardless of whether the agency has notice. The gravaman of the liability referred to in the claim statute is *negligence*. (See 9 Cal.Jur. Ten-year Supp., Public Officers, secs. 178-189.)

The judgment should be reversed.

Curtis, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied December 2, 1943. Curtis, J., Carter, J., and Schauer, J., voted for a rehearing.