**Lyman E. LATOURETTE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 8737.

United States District Court
D. Oregon.

Feb. 15, 1957.

John Reynolds, Portland, Or., for plaintiff.

C. E. Luckey, U. S. Atty., D. Oregon, Portland, Or., for defendant.

EAST, District Judge.

The plaintiff's complaint filed in the above entitled matter, alleges, inter alia:

That on or about September 29, 1926, he and his then wife became the owners as tenants by the entirety of certain beach property within the platted area of Bay Ocean Park, in. the County of Tillamook, State of Oregon, and that thereafter said property was improved by the construction and maintenance thereon of some 42 cottages and other buildings being operated by the plaintiff as a summer beach resort generally known as "Cottage Park"; that the plaintiff became the sole owner of said property upon the death of his wife on or about December 4, 1938, and has been continuously since on or about September 29, 1926, until the present time the owner of said property either as a tenant by the entirety with his wife, or as sole owner.

It further appears from plaintiff's complaint and from facts of which this Court takes judicial notice, that the plaintiff's said property was located upon a narrow peninsula separating Tillamook Bay in Tillamook County from the Pacific Ocean, extending from Cape Mears on the mainland northerly for approximately 5 miles to the entrance or bar of Tillamook Bay aforesaid. That during the latter Twenties said peninsula became a very popular beach resort area and a rather substantial beach community known as Bay Ocean was established thereon.

That gradually over the years since the late Twenties by action of either the seas or the winds the lands have eroded away to the point that the sea has broken through the peninsula into Tillamook Bay on sevaral occasions and the community of Bay Ocean has now become a sunken and washed away community. This situation has been the subject of some several Congressional investigations and actions on the part of Congressional representatives from the State of Oregon, which to the instant case is not of import except as to general background.

It further appears from plaintiff's complaint that in 1917, the defendant, pursuant to authorization by Congress for river and harbor improvement in aid to navigation, constructed a rock jetty north of plaintiff's property and extending into the Pacific Ocean, all in connection with the improvement of the entrance to Tillamook Bay. Further, in 1933, the defendant restored washed away portions of this jetty and extended it to a total

length of 5,700 feet westerly into the Pacific Ocean, all pursuant to authorization of Congress aforesaid.

During the month of February, 1946, the plaintiff's property and improvements thereon were washed away by the action of the Pacific Ocean, all to plaintiff's loss in the alleged amount of the value of the property at $9,000.

The plaintiff in his complaint asserts as grounds for relief that since time immemorial the prevailing winds in the vicinity of Tillamook Bay during the summer months have been from the north and that these winds have blown and deposited dry sand along the Oregon coast line and particularly in the vicinity of the peninsula and plaintiff's property aforesaid. That these sands have fallen into the ocean and have been washed ashore immediately at and northerly from Cape Mears, Oregon. This resulting accretion compensated for the normal winter erosion and created a sloping sandy beach and a peninsula such as described aforesaid.

Plaintiff further contends that the action of defendant in constructing the jetty and the maintenance thereof aforesaid, so interfered with the normal southerly drift of sand on the beach and in the sea that the accretion which had in the past compensated for normal winter erosion no longer could take place and that as a result the ocean came increasingly closer, ultimately washing the plaintiff's property away as aforesaid.

To this complaint the defendant, United States of America, has filed its motion for an order dismissing the above entitled proceeding upon the following three several grounds:

(1) That the complaint does not state facts sufficient to constitute a claim upon which relief can be granted;

(2) That the Court lacks jurisdiction under Title 28, Section 1346(a) (2), U.S.C.A. and the Fifth Amendment to the United States Constitution;

(3) That the cause of action, if any, was barred by the Statute of Limitation, Title 28, Section 2401, U.S.C.A.

In order to resolve the question presented we accept the facts of which the Court takes judicial notice and, further, that all of the facts and contentions set forth in plaintiff's complaint are true.

Plaintiff's claim for relief must necessarily be based upon an award for so-called inverse condemnation and the simple query is: Was the action of Government in constructing and maintaining the jetty aforesaid and the resulting interference with the prevailing northerly winds as claimed by the plaintiff a taking of plaintiff's property for a public use?

It is apparent from plaintiff's complaint that his grievance is not the taking by the government of accretions to his land but a violation of his alleged vested right in future accretions of sand to his property.

It is fundamental that riparian ownership is subject to the government's right in eminent domain to improve navigation. See 29 C.J.S., Eminent Domain, § 115, p. 929, and notes thereto.

The government is not liable to compensate riparian owners for consequential damages caused by improvement made upon navigable waterways in aid of navigation. United States v. Willow River Power Co., 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 1101.

The term "consequential damages" as used herein is deemed to mean damages to property not *actually taken* (emphasis ours) but an injury to property that occurs as a natural result of an act lawfully done by another and for which no liability exists. The term "consequential damages" is sometimes taken to mean damages which would not have been actionable in common law if done by a private individual. 29 C.J.S., Eminent Domain, § 111, p. 919, and notes thereto.

The plaintiff in support of his contention that his loss is the result of a taking by the government of his lands for which he is entitled to compensation under the Fifth Amendment to the Constitution of the United States of America and Title 28, U.S.C.A. Sec. 1346(a) (2) cites the

following cases: United States v. Dickinson, 4 Cir., 152 F.2d 865; United States v. Chicago, Burlington & Quincy R. Co., 7 Cir., 90 F.2d 161; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L. Ed. 539; Pumpelly v. Green Bay Co., 13 Wall 166, 20 L.Ed. 557, and also the following Supreme Court of Oregon cases: Morrison v. Clackamas County, 141 Or. 564, 18 P.2d 814; Tomasek v. Oregon State Highway Commission, 196 Or. 120, 248 P.2d 703.

A perusal of all these cases reveals erosion of plaintiff's property through flooding and a washing away of plaintiff's land directly and proximately caused by the improvement for the benefit of the public by the sovereign involved.

In the case at bar, however, there is no contention on the part of the plaintiff that the jetty constructed by the government in any wise caused a washing or erosion of plaintiff's land not theretofore experienced, but merely prevented future accretions to his land and adjacent lands offering protection to his.

■ So rises the query, did the plaintiff have a vested right in such future accretions? If plaintiff has no such vested right there would be no direct taking and the injury complained of merely consequential and not compensable in its strictest terms.

This Court is of the opinion that plaintiff had no vested right in the continuance of future accretions to his property by way of sands carried by the winds and in turn washed by the sea upon his lands. Such is the doctrine in Cohen v. United States, C.C.N.D.Cal.1908, 162 F. 364. The Court, in that case, said, at page 370:

"* * * But the first question to be determined is whether the petitioner is entitled to recover compensation for the loss of this gravel, whether the quantity be more or less.

"The riparian owner has no vested right in future accretions. Western Pac. Ry. Co. v. Southern Pacific Co., [9 Cir.], 151 F. 376, 399, 80 C.C.A. 606. The riparian owner cannot

have a present vested right to that which does not exist, and which may never have an existence."

See also Miramar Co. v. City of Santa Barbara, 1943, 23 Cal.2d 170, 143 P.2d 1, and the cases cited therein.

This jetty and resulting action of the sea directly and proximately resulting from the construction and maintenance of the jetty was a cause for litigation in the case of Southern Pacific Co. v. United States, 1923, 58 Ct.Cl. 428, affirmed, 1924, 266 U.S. 586, 45 S.Ct. 124, 69 L.Ed. 454. The doctrine of that case assumed a casual connection between the jetty and the damage to plaintiff's property, but held the damage was not a compensable taking but only consequential.

In view of the foregoing conclusion it is not necessary for the Court to deal with the second and third grounds of the defendant's motion. The above entitled proceeding should be dismissed without prejudice, and counsel for the defendant is requested to submit appropriate order of dismissal in conformity with the above.