### GOODMAN et al. v. UNITED STATES.
#### No. 11680.

Circuit Court of Appeals, Eighth Circuit.
Aug. 6, 1940.

John J. Hess, of Council Bluffs, Iowa (George H. Mayne, of Council Bluffs, Iowa, H. P. Savage, of Rockport, Mo., and George H. Mayne, II, of Council Bluffs, Iowa, on the brief), for appellants.

Cloid I. Level, Asst. U. S. Atty., of Des Moines, Iowa, and Tom E. DeWolfe, Atty., Department of Justice, of Washington, D. C., (Hugh B. McCoy, U. S. Atty., of Oskaloosa, Iowa, on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and BELL, District Judge.

THOMAS, Circuit Judge.

This appeal is from an order dismissing plaintiffs' cause of action solely on the ground that the court is without jurisdiction of the subject matter.

Plaintiffs' cause of action is asserted in a petition containing two counts, both under the Tucker Act. Title 28 U.S.C.A. § 41(20). The claim is founded upon the Act of Congress of January 21, 1927, 44 Stat. 1010, 1013, authorizing the improvement of the Missouri river between Kansas City, Missouri, and Sioux City, Iowa, "with a view to securing a permanent navigable channel six feet in depth." The plaintiff Goodman owns a tract of agricultural land lying in the alluvial river bottom in Mills county, Iowa, about 17 miles downstream from the City of Omaha, Nebraska, and he leases another tract not far from the first. Prior to 1937, the government commenced work on the authorized improvements by the construction of pile dikes and revetments in and along the river above, adjacent to and below plaintiffs' lands in order to effect the purpose of making a six foot navigable channel. The plaintiffs allege that the proximate result of the construction work was to obstruct and interfere with the natural width and flow of the river and thereby artificially raise the natural level of the flood water of the river in excess of three feet higher than it would have been but for the doing of such work. In 1937 and 1938 plaintiffs' lands were overflowed by flood waters and the crops destroyed. Plaintiffs allege that the lands were overflowed as a result of the improvements constructed by the government and that the lands will, for an indefinite period in the future, be subject to such overflows.

In count one of the petition plaintiffs allege that by reason of the construction of the above described improvements the government has "taken" without condemnation one-half the value of the tract of land owned by Goodman; and in count two they claim a "taking" of the 1937 and 1938 crops on the leased tract, and compensation is demanded in each count.

The defendant contends that the court was without jurisdiction because the government is not suable in the federal courts without its consent, and that it has not waived its immunity from suit in this instance. Plaintiffs concede that the government is not suable without its consent; but, it is contended, there was an implied agreement to pay for the taking of the land, compensation for which is guaran-

teed by the Fifth Amendment; that the cause of action does not sound in tort; and that, therefore, the consent to suit is given by the Tucker Act. To this contention the government replies (1) that there has been no "taking" of plaintiffs' property within the meaning of the Fifth Amendment and (2) that a right to maintain the suit is not granted under the Tucker Act because plaintiffs' cause of action does sound in tort.

The Fifth Amendment provides: "nor shall private property be taken for public use, without just compensation."

The pertinent part of the Tucker Act provides that the district courts shall have original jurisdiction "Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable."

The court found, or the evidence discloses, that the Missouri river is a navigable stream which during the months of March, April, May, June and July of each year carries a large amount of flood water from upstream past plaintiffs' land. Prior to the construction of the government works in aid of navigation pursuant to the Act of Congress, the channel of the river past plaintiffs' lands was sufficiently broad to carry ordinary floods. The river carries a large amount of silt and other debris, and because of the deposit of such silt and debris the river frequently changes its channel. The channel is sinuous and meandering. Records of the floods and of the meandering of the river have been kept for many years. At one time the channel flowed across what is now plaintiffs' land. All of plaintiffs' land is accretion land lying in the river bottoms adjacent to or near the channel. Floods in 1872, 1881, and 1927 covered most of the lands. The flood level on plaintiffs' lands in 1927 was approximately 10 inches lower, however, than it was in 1937, 1938, and 1939, although the volume of water was substantially greater in 1927 than in the latter years.

As a part of the Missouri river navigation program the government has constructed on the main stem of the river the Fort Peck Dam in Montana. Its purpose is to regulate the flow of the river primarily for navigation purposes and secondarily for its effect on flood control. It was partially in operation in 1938 but not in 1937 or 1939. Had it been in operation in those years it would have substantially reduced the flood heights below their natural levels. It will soon be in full operation; and the plan contemplates that it will fully control the flood waters originating in the headwaters of the Missouri river.

The floods are also affected by a change made in the government plan in 1938. Just below plaintiffs' lands there is a sharp bend in the river known as St. Mary's Bend. It is of the oxbow type, the river flowing around a long and narrow peninsula of land extending eastwardly. In 1938 the government constructed a channel across the neck of the bend, and the new channel already carries one-half to two-thirds of the ordinary flow of the water.

The improvements constructed by the government in the vicinity of plaintiffs' land consist of revetments along the banks of the river to prevent their washing away and pile dikes extending from the shores into the bed of the river for the purpose of restricting the water into a narrower channel. All of the structures complained of are in the navigable channel of the river and none of them are upon or touch plaintiffs' lands. The tops of the dikes are below the flood level of the river. Their effect is to cause the water to flow around their ends and to confine the stream at ordinary levels in a narrower channel. As a result, the silt carried by the river settles on the lower or downstream side of the dikes, raising the bed of the river in that part of the flood plain while at the same time the water scours and deepens the narrower channel giving it the desired depth for navigation purposes.

The trial court found that as the direct result of the construction of the pile dikes and the sedimentation resulting therefrom the ordinary high-water channel in the vicinity of plaintiffs' lands was obstructed and the carrying capacity thereof reduced, thereby causing the flood waters of the river to be raised to a level of three feet

above that which it would have been had the government work not been done; that the increase in the flood levels of the river caused and resulted in the overflow of a large proportion of plaintiffs' lands during the years 1937, 1938, and 1939; and that but for the government work the overflow would not have occurred.

The court further found that it is reasonably to be anticipated that the government work, as it now exists, will cause a future flooding of plaintiffs' lands in times of ordinary floods in the river and will reduce their value.

The court concluded:

"1st. That plaintiffs have neither plead nor proven any situation from which could be deduced an intention to take plaintiffs' property or an implied agreement to pay therefor, and that there was not a taking within the meaning of the constitution of either the lands or crops. And

"2d. That the action of the plaintiffs is for the recovery of consequential damages, sounds in tort, and should be dismissed on the ground that this court is without jurisdiction to hear and determine the same."

■■■ The federal government derives its authority over the navigable rivers of the United States from the commerce clause of the constitution, U.S.C.A.Const. Art. 1, § 8, cl. 3; and the government's right to improve such rivers in aid of navigation is paramount to the rights of riparian owners in the beds of all navigable streams. Pike Rapids Power Co. v. Minneapolis, St. P. & S. S. M. R. Co., 8 Cir., 99 F.2d 902, 909. But the government may not for the purpose of aiding navigation permanently convert to the public use, by means of dams and other structures, the land of the riparian owner above the mean high-water line without just compensation. Pumpelly v. Green Bay Co., 13 Wall. 166, 20 L.Ed. 557; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; Willink v. United States, 240 U.S. 572, 580, 36 S.Ct. 422, 60 L.Ed. 808; Union Bridge Co. v. United States, 204 U.S. 364, 390, 27 S.Ct. 367, 51 L.Ed. 523; Shively v. Bowlby, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331. If the authorized construction of the improvement in the river has resulted in a "taking" of plaintiffs' property for which there must be "just compensation" under the Fifth Amend-

ment, the government has impliedly promised to pay that compensation and plaintiffs are entitled to recover in this action. Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 21, 60 S.Ct. 413, 84 L.Ed. 554. On the other hand, if the government's project has resulted in but a temporary invasion of the land or the injury thereto is but the consequential result of, or merely incidental to, the improvement of the channel of the river in aid of navigation, no implied obligation on the part of the government can arise. Jackson v. United States, 230 U.S. 1, 33 S.Ct. 1011, 57 L.Ed. 1363; Bedford v. United States, 192 U.S. 217, 24 S.Ct. 238, 48 L.Ed. 414; Gibson v. United States, 166 U.S. 269, 17 S.Ct. 578, 41 L.Ed. 996; Sanguinetti v. United States, 264 U.S. 146, 149, 44 S.Ct. 264, 68 L.Ed. 608; United States v. Lynah, supra, at page 472 of 188 U.S., 23 S.Ct. 349, 47 L.Ed. 539; United States v. Cress, supra, at page 327 of 243 U.S., 37 S.Ct. 380, 61 L.Ed. 746; Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240; Montana Company v. St. Louis Mining, etc., Co., 152 U.S. 160, 169, 14 S.Ct. 506, 38 L.Ed. 398. In such cases the action for damages is analogous to the common law actions of trespass and case, sounds in tort, and the court is without jurisdiction to grant relief because the government has not consented to be sued in tort. See Munal v. Brown, C.C.Colo., 70 F. 967. Recovery of the damages, whether proximate or consequential, is precluded by the express terms of the Tucker Act and the claimant is therefore without a remedy against the United States. Keokuk & Hamilton Bridge Company v. United States, 260 U.S. 125, 127, 43 S.Ct. 37, 67 L.Ed. 165; Tempel v. United States, 248 U.S. 121, 129, 39 S.Ct. 56, 63 L.Ed. 162; Franklin v. United States, 6 Cir., 101 F.2d 459; Ross Construction Co. v. Yearsley, 8 Cir., 103 F.2d 589.

In Sanguinetti v. United States, supra [264 U.S. 146, 44 S.Ct. 265, 68 L.Ed. 608], the Supreme Court said that "in order to create an enforceable liability against the government, it is at least necessary that the overflow be the direct result of the structure, and constitute an actual, permanent invasion of the land, amounting to an appropriation of and not merely an injury to the property." The overflow, however, need not be continuous in nature. In United States v. Cress, supra [243 U.S.

316, 37 S.Ct. 385, 61 L.Ed. 746] the court held that "There is no difference of kind, but only of degree, between a permanent condition of continual overflow by back-water and a permanent liability to intermittent but inevitably recurring overflows; and, on principle, the right to compensation must arise in the one case as in the other. If any substantial enjoyment of the land still remains to the owner, it may be treated as a partial instead of a total devesting of his property in the land." And in Danforth v. United States, supra [308 U.S. 271, 60 S.Ct. 237, 84 L.Ed. 240], the court said, "The Government could become liable for a taking, in whole or in part, even without direct appropriation, by such construction as would put upon this land a burden, actually experienced, of caring for floods greater than it bore prior to the construction." See also Jacobs v. United States, 290 U.S. 13, 16, 54 S.Ct. 26, 78 L.Ed. 142; United States v. Sponenbarger, 308 U.S. 256, 267, 60 S.Ct. 225, 84 L.Ed. 230.

The problem for determination, therefore, is reduced to the question of whether the government works has subjected the plaintiffs' land to the burden of "a permanent liability to intermittent but inevitably recurring overflows." In the complaint it is alleged that the land was overflowed in 1937 and 1938 in times of ordinary flood waters in the river and that "said land will, for an indefinite period in the future, be subjected to such overflow." At the plaintiffs' request the court found "That it is to be reasonably anticipated that the government work in said vicinity, as it now exists, will cause a future flooding of plaintiffs' land in time of ordinary floods in said river."

When considered in the light of the evidence both the allegation of the complaint and the finding of the court leave the permanent or temporary effects of the construction of the government works wholly in conjecture. The plaintiffs' witnesses testified that the flood waters of the river would be permanently raised four or five feet by the government construction. Presumably this would result in a recurrent overflow on plaintiffs' land, at least at the levels attained in 1937, 1938 and 1939. On the other hand, the government witnesses testified that as a result of the construction of the cut-off across St. Mary's Bend and the deepening of the channel by scouring, the efficiency or carrying capacity of the channel would eventually be increased and the possibilities of damage from flood would be reduced. There is also testimony that as a result of the government work the channel will be stabilized so as to preclude the periodic shifts in the course of the river which have been characteristic in the past. In addition to these benefits the Fort Peck Dam and reservoir, when finally placed in operation, will reduce the flood heights of the river substantially below their natural levels. This evidence tends to indicate that the overflow of plaintiffs' land may be a temporary condition and that when completed, the eventual result of the government's project may in fact be beneficial rather than injurious to the land.

The burden rested on the plaintiffs to allege and prove that the condition complained of is permanent and not temporary. The evidence bearing on this question is in sharp conflict. The plaintiffs did not request any findings on this issue other than the one granted by the court, and they of course did not except to this finding. Their sole contention on appeal is that from the facts found by the trial court, erroneous conclusions of law were drawn. This contention cannot be sustained. Jurisdiction in this suit and the plaintiffs' right of recovery are both dependent upon the existence of an implied contract by which the government may be held bound to make compensation for a taking of plaintiffs' land. Such an obligation may not be implied in the absence of an actual appropriation of the land by the government. Peabody v. United States, 231 U.S. 530, 539, 34 S.Ct. 159, 58 L.Ed. 351; United States v. North American, etc., Co., 253 U.S. 330, 335, 40 S.Ct. 518, 64 L.Ed. 935. Assuming, without deciding, that an appropriation may be shown if it should later develop that after the completion of the government works the plaintiffs' land actually experiences a recurrent overflow in times of ordinary flood water (see Danforth v. United States, supra; Portsmouth Co. v. United States, 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287), a present appropriation does not appear upon the facts found by the trial court. Without a specific finding supported by substantial evidence on the question of the permanent or temporary character of the invasion of plaintiffs' land this court cannot say that the conclusions of the district court were er-

roneous or that its judgment should be reversed.

 A question of procedure remains for consideration. The appellants brought up for review only the pleadings, findings and opinion of the court below, and the judgment. The appellee designated and brought up the trial proceedings including the evidence. Appellants were required to pay the costs of printing the entire transcript. This court denied a motion to strike that part of the proceedings designated by the appellee without prejudice if it should appear later that appellee had caused unnecessary expense; and appellants have filed a motion to require appellee to pay costs of printing that part of the record designated by it.

The appellee did not ask the trial court to modify his findings, and it took no cross-appeal. It says in its brief that the trial court erred in certain of the findings bearing upon damages, but does not request this court to correct them. The controlling issue was not whether plaintiffs' lands had been damaged as the result of the structures placed in the river bed and along the shores, although the government maintained that no such damages were sustained, but whether there was a taking within the meaning of the Fifth Amendment. The court based his decision on this controlling issue and entered judgment for the government dismissing the cause of action for want of jurisdiction.

Ordinarily it would be unnecessary in such a case to bring into this court on appeal a transcript of the evidence and the exhibits. But in this instance, owing to the nature of the case, both the exhibits and the testimony have been very useful in understanding the issues. In his findings the court referred to the exhibits, and without them the findings are not clear. In their briefs and arguments counsel for both parties made frequent reference to and use of both the exhibits and the testimony. The trial court in his order for the transmission of the exhibits expressed the opinion that they should be inspected by the appellate court in connection with the appeal. In view of these circumstances we think the motion should be denied.

For the foregoing reasons it is the order of the court that the judgment appealed from be and it is affirmed, and the motion to tax a part of the cost of printing to the appellee is denied.