427 F.2d 767
 James Leo KING and Lodena King, Tom Fouts and Jennie Fouts, Pearl Hawkins, Fred Shaw and Fay Shaw, George K. Winter and Rachael Winter, William F. Wagner, Adm. Estate of Lucy Dame, J. W. Hollister and Cora L. Hollister, J. C. King and Jean King, Russel McConnaughey, and Marvin L. Winter, All of the State of Kansas
v.
The UNITED STATES.
 No. 138-67.
 United States Court of Claims.
 June 12, 1970.
 
 Darrell D. Kellogg, Wichita, Kan., for plaintiffs. James N. Jacobi, Washington, D. C., attorney of record, Kurrus & Jacobi, Washington, D. C., Robert H. Nelson, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., of counsel.
 John J. Cain, Washington, D. C., with whom was Asst. Atty. Gen., Shiro Kashiwa, for defendant.
 Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This case was referred to Trial Commissioner C. Murray Bernhardt with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on September 17, 1969. Exceptions to the commissioner's opinion, findings and recommended conclusion of law were filed by defendant; plaintiffs request their adoption by the court; and, the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner's opinion, findings, and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment herein. Therefore, it is concluded that plaintiffs are entitled to recover and judgment is entered for plaintiffs in an amount to be determined pursuant to Rule 131(c).
 
 OPINION OF COMMISSIONER
 BERNHARDT, Commissioner:
 
 2
 The issue met here is whether the defendant's completion in 1960 of the Toronto Dam and Reservoir on the Verdigris River in Kansas created a backwater effect which has since subjected bordering farms owned or rented by the several plaintiffs to intermittent — but permanent and substantial — flooding, as they contend and the Government denies in this action under the Fifth Amendment for a constructive taking, or inverse condemnation as it is sometimes termed. The detailed facts in the report trailing this opinion narrowly but surely conclude that a compensable taking has occurred.
 
 
 3
 The plaintiffs own or rent on crop shares several farms flanking the river from 21.2 to 26.6 miles above the dam. The properties lie in the flood plain of the river and have historically been prone to occasional floods, particularly in the months between April and July when fledgling crops of wheat, alfalfa, corn, milo, oats and soybeans are most vulnerable to damage in their growth cycle. Prior to 1960 floods caused by heavy flows were less frequent and destructive than comparable flows since completion of the dam, even excluding from consideration the unprecedented series of 11 to 13 floods in 1961, which would have been just as injurious to plaintiffs in the absence of the dam. More pointedly, postdam floods have lingered on the land much longer than before, a condition ruinous to most growing crops. Moreover, the altered flood pattern has impaired the land itself in places by scouring the soil, which condition ditching and diking has failed to prevent.
 
 
 4
 In preparation for the dam project the Corps of Engineers made abtruse studies which resulted in determinations to acquire the fee in lands upriver from the dam lying below 927 feet in elevation, and flowage easements over lands between elevations 927 and 936 feet, plus flowage easements which were acquired in some cases as to properties below 927 feet and in others up to 939.5 feet. For reasons not clear in the record it was decided to acquire no interests in properties above river mile 292.7, which marks the lower limits of plaintiffs' properties, even though the Engineers projected backwater effects of the dam throughout the reach of plaintiffs' properties which they (the Engineers) opined would be affected adversely only in sloughs and low-lying areas of marginal farming value. The backwater effects were plotted in a so-called envelope curve derived by application of a standard hydrologic formula and technique to inflows of 8,000, 45,000, and 105,000 c. f. s. (cubic feet per second) entering the prospective reservoir at varying elevations of the latter. It was estimated on an historical basis that a flood of 105,000 c. f. s. of five days' duration would occur on the average of once every 50 years. Findings 5 through 8 describe the mechanics of the backwater projection, but surrounding circumstances pose questions as to its accuracy. Principally, there was an absence of basic hydrologic data upon which to predicate the conclusions reached, and events since completion of the dam (i. e., intermittent flooding of major portions of the croplands) serve to hindsight flaws in the prognosis. The deficiencies are described in finding 6.
 
 
 5
 Although there is no reason to doubt the technical ability of hydrologic engineers to forecast backwater effects of a proposed dam within a reasonable margin of error, to do so more data is required than apparently the Engineers had in this instance. Principally wanting was knowledge concerning the contributions of tributaries, adequate hydrographic studies of the terrain including elevations of river bottoms, banks and adjacent farmlands in the valley, and in-flow measurements usefully near the properties in suit.
 
 
 6
 An analysis of statistics of post-dam floods compared with those antedating the dam (finding 21), while expectedly not in precise unison, yields the probability that the backwater effects of the dam were underestimated with the result that henceforth the plaintiffs may expect, intermittently but permanently, greater damage to major portions of their croplands and crops than theretofore, which unfortunate prospect nicely satisfies case law requirements for a compensable taking, since the causes constitute action by the Government involving "a direct interference with or disturbance of property rights." R. J. Widen Co. v. United States, 357 F.2d 988, 993, 174 Ct.Cl. 1020, 1027 (1966), and cases cited. Both personal and real property are within the protection of the Fifth Amendment. Claimants have proved the interference with their crops to be permanent rather than merely temporary (Cf. Goodman v. United States, 113 F.2d 914 (CA 8, 1940)), and that it was substantial in nature. Where property on a river is subject to intermittent overlows in its natural state and the construction of a down-river dam makes it more subject to overflows than before, the difference is merely one of degree for purposes of compensation. Jacobs v. United States, 45 F.2d 34 (CA 5, 1930), reversed on other grounds, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933). Similarly, a permanent intermittent flooding of land resulting from the Government's construction of a dam across a navigable river was a partial taking for which the owner was entitled to compensation. United States v. Willis, 141 F.2d 314 (CA 4, 1944). A provision of the constitution of the State of South Carolina, counterpart to the language of the Federal Fifth Amendment as to taking, was held by the Supreme Court of that state under closely analogous circumstances to entitle the owner to compensation for a prolonged flooding and destruction of a bean crop brought about by a dam constructed by the City of Greenville. Lindsey v. City of Greenville, 247 S.C. 232, 146 S.E.2d 863.
 
 
 7
 That some plaintiffs claim a diminution in the value of their fee to properties rented out on crop shares to other plaintiffs claiming a permanent subjection of their tenant crop interests to intermittent but permanent damage does not prevent separate compensation for each of the interests thus fractioned (Cf. United States v. Twin City Power Co., 248 F.2d 108 (CA 4, 1957)), but merely has relevance to the quantum of recovery, as does the nature and extent of the lease interests, which matters will be fit subjects of inquiry when the separated issue of damages arises for disposition.