Paul WAID and Jo Waid; Norm Santesson and Jo Santesson; Waid Services, Inc.; Richard Salcido and Deborah Salcido; and Ted Adams and Donna Adams, Appellants (Plaintiffs),

v.

STATE of Wyoming, by and through the DEPARTMENT OF TRANSPORTATION; and Burlington Northern Railroad Company, Appellees (Defendants).

No. 98–20.

Supreme Court of Wyoming.

Feb. 8, 2000.

Representing Appellants: S. Joseph Darrah and Joseph E. Darrah of Darrah & Darrah, P.C., Powell, Wyoming; and Brad Smith, Cody, Wyoming.

Representing Appellee State, by and through the Department of Transportation: William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Thomas C. Wilson, Senior Assistant Attorney Gen-

eral; and Jennifer A. Cudworth, Assistant Attorney General, Cheyenne, Wyoming.

Representing Appellee Burlington Northern Railroad Company: John A. Coppede of Sundahl, Powers, Kapp & Martin, Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

Paul Waid, Jo Waid, Norm Santesson, Jo Santesson, Waid Services, Inc., Richard Salcido, Deborah Salcido, Ted Adams, and Donna Adams (collectively the Waid group) appeal from a summary judgment entered in favor of the Wyoming Department of Transportation (WYDOT) and Burlington Northern Railroad Company (Burlington) in an action for inverse condemnation. Specifically, the Waid group contests the ruling, upon which the district court premised the summary judgment, that Wyo. Stat. Ann. § 1–26–516 (Lexis 1999) requires a permanent taking for inverse condemnation. As we analyze this statute, a permanent taking is not required, but the district court's grant of summary judgment can be, and it is, affirmed on other grounds. The Waid group failed to satisfy the time limit for filing a claim against WYDOT, as set forth in Wyo. Stat. Ann. § 1–39–113 (Michie 1988). The record demonstrates that there is no causal connection between Burlington's activities and any damage to the Waid group lands, nor does Burlington come within the category of one conducting activities on adjacent land for purposes of inverse condemnation under the statute. The Findings of Fact and Order Granting Defendants' Motions for Summary Judgment is affirmed.

In the Brief of Appellant, filed on behalf of the Waid group, the issues are articulated in this way:

A. Did the District Court err in holding that defendants could defeat claims for inverse condemnation of a flooding easement, brought under W.S. § 1–26–516, by showing that they could take steps to prevent recurrence of flooding in the future without submitting evidence to support that claim?

B. Did the District Court err in granting summary judgments to all defendants on the issue of the taking of personal property without the Defendants submitting evidence in support of their motion?

C. Could the District Court have granted summary judgment on any of the other bases on which Defendants sought summary judgment?

This Statement of the Issues is found in the Brief of Appellee Burlington Northern Railroad Company:

1. Whether the district court properly granted summary judgment against the Appellants on their inverse condemnation claims where the evidence showed the claims were based on two isolated instances of temporary flooding?

2. Whether the district court properly granted summary judgment against the Appellants on their inverse condemnation claim where the landowners as a matter of law failed to show that their properties were damaged for a public use?

3. Whether a landowner can maintain an inverse condemnation claim against a party for allegedly inversely acquiring a property right for which it did not possess the power to acquire directly through an eminent domain proceeding?

4. Whether this Court should affirm the district court's summary judgment against the Appellants on their inverse condemnation claims where the evidence failed to show that this Appellee's activities were the proximate cause of the Appellants' alleged damages?

In the Brief of Appellee State of Wyoming, By and Through the Department of Transportation, the issues are stated to be:

1. Whether the district court was correct in granting summary judgment to Appellee State of Wyoming by finding that Appellants failed to show a permanent taking because Appellants' claims were based on a very few isolat-

* Retired November 2, 1998.

ed instances of temporary flooding which served no public service.

2. Whether Appellants' claim was timely filed under the Wyoming Governmental Claims Act pursuant to case authority and stipulated to by all parties when Appellants discovered they had a cause of action as early as the early 1980s and no later than 1987 when the alleged first flood occurred.

This statement of arguments appears in the Reply Brief of Appellants:

Plaintiffs are not required to demonstrate permanent taking or public purpose in accordance with W.S. § 1–26–516.

Appellants have timely filed their claims.

The State cannot re-characterize appellant's claims in order to apply an otherwise inapplicable cause of action because appellants have proffered evidence of intentional conduct.

The Waid group owns property lying to the east of U.S. Highway 20, which runs north and south along the west border of that property. Burlington owns a railroad track bed west of U.S. Highway 20, and operates trains upon that track. Upper Hanover Irrigation District (Upper Hanover) and Lower Hanover Canal Association (Lower Hanover) operate two irrigation systems that furnish water for agricultural use in the vicinity. In the early years of the 1980's, WYDOT raised the elevation of the highway by approximately ten feet. At the time the highway was raised, both WYDOT and Burlington replaced their existing culverts in that area with new culverts of the same size.

In July of 1987, a severe rain storm dropped three inches of water on and around the Waid group property in only about an hour. Faced with the deluge, Upper Hanover and Lower Hanover discharged water into Durkee Draw, a drainage that lies between U.S. Highway 20 and the Waid group property. The culvert under the highway could not accommodate all the water and carry it under the road, while the elevation of the road prevented water from passing over the top of the road. The water flowed to the east instead, flooding the Waid group property and causing extensive damage. A similar event occurred in May of 1993, which result-

ed in further damage to the Waid group property. A third flood threatened to occur in July 1994, but, on that occasion, Upper Hanover diverted water into an additional ditch. That diversion limited the flow into Durkee Draw, and the highway culvert was able to accommodate the water that then went down Durkee Draw.

The Waid group filed claims with Upper Hanover, Lower Hanover, and WYDOT in February of 1995, pursuant to the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1–39–101 through 1–39–120 (Michie 1988). On March 31, 1995, the Waid group filed a complaint in the district court alleging inverse condemnation pursuant to Wyo. Stat. Ann. § 1–26–516 and asserting real and personal property damage together with diminution in value. Named as defendants in the action were Upper Hanover, Lower Hanover, Burlington, and WYDOT. Voluminous pleadings followed, including discovery, after which the district court granted summary judgment in favor of all the defendants. Preferring not to defend the appeal in this case, Upper Hanover and Lower Hanover settled with the Waid group, and the Waid group pursued this appeal against Burlington and WYDOT.

Recently, we have summarized our process for the review of summary judgments granted pursuant to W.R.C.P. 56 in this way:

Our standard for the review of summary judgments is well established:

"When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the

facts contained in affidavits, depositions and other proper material appearing in the record.'" *Reno Livestock Corporation v. Sun Oil Company (Delaware)*, Wyo., 638 P.2d 147, 150 (1981). See also, *Blackmore v. Davis Oil Company*, Wyo., 671 P.2d 334, 336 (1983).

"A summary judgment should only be granted where it is clear that there are no issues of material facts involved and that an inquiry into the facts is unnecessary to clarify the application of law. *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975). A material fact is one which has legal significance. *Johnson v. Soulis, supra.* It is a fact which would establish a defense. *Wood v. Trenchard*, Wyo.[,] 550 P.2d 490 (1976). After the movant establishes a prima facie case the burden of proof shifts to the opposing party who must show a genuine issue of material fact, *Gennings v. First Nat'l Bank of Thermopolis*, Wyo., 654 P.2d 154 (1982), or come forward with competent evidence of specific facts countering the facts presented by the movant. *Matter of the Estate of Brosius*, Wyo., 683 P.2d 663 (1984). The burden is then on the nonmoving party to show specific facts as opposed to general allegations. 10 Wright & Miller, *Federal Practice and Procedure: Civil* § 2727, p. 538. The material presented must be admissible evidence at trial. Conclusory statements are not admissible. *Bancroft v. Jagusch*, Wyo., 611 P.2d 819 (1980). We give the party defending the motion the benefit of any reasonable doubt." *Roth v. First Security Bank of Rock Springs, Wyoming*, Wyo., 684 P.2d 93, 95 (1984).

*Mercado v. Trujillo*, 980 P.2d 824, 825–26 (Wyo.1999).

■ We examine this record from the point of view most favorable to the party who opposed the motion, giving that party the benefit of all favorable inferences that may fairly be drawn from the record. *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1250 (Wyo.1997). The record review has satisfied this Court that there is no genuine issue as to any material fact that would have the effect of establishing or refuting an essential element of the claim or defense asserted by the parties. *Century Ready–Mix Co. v. Campbell County School Dist.*, 816 P.2d 795, 799 (Wyo.1991) (*quoting Doud v. First Interstate Bank of Gillette*, 769 P.2d 927, 928 (Wyo.1989)). We then determine whether the prevailing parties were entitled to judgment as a matter of law. In evaluating entitlement to judgment as a matter of law, we apply our rule that if the summary judgment can be upheld, under the record presented, upon any proper legal theory, we do so. *Century Ready–Mix Co.*, 816 P.2d at 799; *Reeves v. Boatman*, 769 P.2d 917, 918 (Wyo.1989).

■ We turn initially to the rationale articulated by the district court for the grant of summary judgment to WYDOT and Burlington. In the course of its Findings of Fact and Order Granting Defendants' Motions for Summary Judgment, the district court ruled that a permanent taking was a necessary element of a claim for inverse condemnation. The court invoked *Goodman v. United States*, 113 F.2d 914, 917 (8th Cir.1940) in support of that determination. In *Goodman*, the United States Court of Appeals for the Eighth Circuit held that temporary flooding did not constitute a taking for purposes of presenting a claim under inverse condemnation. Indeed that is an accurate reading of *Goodman*, but this doctrine is not viable in Wyoming because of subsequent legislation and precedent making *Goodman*, its progenitors, and any progeny inapplicable with respect to inverse condemnation actions in Wyoming.

In 1981, the Wyoming Eminent Domain Act, Wyo. Stat. Ann. §§ 1–26–501 through 1–26–516 (Lexis 1999), became law. The final section of the Wyoming Eminent Domain Act was entitled "Action for inverse condemnation," and it provides:

When a person possessing the power of condemnation *takes* possession of *or damages* land in which he has no interest, or *substantially diminishes the use or value of land*, due to activities on adjoining land without the authorization of the owner of the land or before filing an action of condemnation, the owner of the land may file an action in district court seeking dam-

ages for the taking or damage and shall be granted litigation expenses if damages are awarded to the owner.

Wyo. Stat. Ann. § 1–26–516 (emphasis added). The Wyoming Eminent Domain Act encompasses the entire subject of eminent domain, and abrogates any earlier contrary decisions. *L.U. Sheep Co. v. Board of County Com'rs of County of Hot Springs*, 790 P.2d 663, 669 (Wyo.1990).

■ When this Court is tasked with the interpretation of a statute, we initially invoke this rule of statutory interpretation:

We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making an " 'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.' " *Parker Land and Cattle Company v. Wyoming Game and Fish Commission*, 845 P.2d 1040, 1042 (Wyo.1993) (*quoting Rasmussen v. Baker*, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia.*

*State Dept. of Revenue and Taxation v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo.1994). We have followed that rule consistently since it was articulated. *Flores v. Flores*, 979 P.2d 944, 946 (Wyo.1999); *Cargill v. State, Dept. of Health, Div. of Health Care Financing*, 967 P.2d 999, 1001 (Wyo.1998); *Hill v. Value Recovery Group, L.P.*, 964 P.2d 1256, 1258 (Wyo.1998); *State ex rel. Wyoming Workers' Safety and Compensation Div. v. Bruhn*, 951 P.2d 373, 376 (Wyo.1997). It is clear from the plain language of Wyo. Stat. Ann. § 1–26–516 that our legislature intended to allow recompense to an owner of property not only for permanent takings, but also for damage or diminution in value. The Waid group alleged all three of these premises for compensation in the complaint that was filed. We hold that, under the statute, no permanent taking is required in order for the Waid group to maintain the action for inverse condemnation. This ruling leads to a consideration of whether this Court can affirm the grant of summary judgment for WYDOT and

Burlington under any other proper legal theory.

■ The summary judgment in favor of Burlington can be upheld on the basis of the statutory language. The record discloses that U.S. Highway 20 runs along the western border of the Waid group property, and the railroad line lies to the west of the highway, separated from the Waid group property by U.S. Highway 20. The critical phrase in the inverse condemnation statute is "due to activities on adjoining land without the authorization of the owner of the land or before filing an action of condemnation * * *." Wyo. Stat. Ann. § 1–26–516. That phrase is set off by commas, and is separated from the preceding language by a comma leading to a grammatical interpretation that the legislature intended the phrase as a modifier for all preceding phrases. If the initial comma were not present, the language would properly be construed as modifying only the immediately preceding phrase. *Tietema v. State*, 926 P.2d 952, 954 (Wyo.1996).

The rule with respect to a modifier, like this adverbial clause, is perhaps best stated in 2A *Sutherland Statutory Construction* § 47.33 at 270 (5th ed.1992):

Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." Thus a proviso usually is construed to apply to the provision or clause immediately preceding it. The rule is another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.

**Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.**

(Footnotes omitted and emphasis added.) This proposition was quoted and applied in a dissenting opinion in *Battlefield, Inc. v. Neely,* 656 P.2d 1154, 1165 (Wyo.1983) (Thomas, J., dissenting), and it was relied upon as authoritative in *Tietema,* 926 P.2d at 954.

In a different grammatical context we said, speaking to the significance of the placement of a comma:

> The application of commonly accepted rules of grammar would indicate that, by the proviso found in § 12–6–102(a), which reads,
>
> > "[n]o adult shall transport, or have in his possession or control, any alcoholic liquor or malt beverage, with the intent of furnishing the same to any minor, while operating or occupying a motor vehicle,"
>
> the legislature intended the phrase "while operating or occupying a motor vehicle" to modify the word "adult." Since the phrase is set off by a comma, it is a dangling elliptical clause unless it is assumed to refer to "adult," which is the subject of the main clause. J. Hodges & M. Whitten, Hodge's College Handbook (7th ed.1972). In contrast, if the comma were not there, the phrase would modify the word "minor." While it is true that a court does not sit as a "panel of grammarians" to review statutes, neither is the judiciary permitted to regard ordinary principles of English prose as irrelevant when construing a statute. *Flora v. United States,* 362 U.S. 145, 150, 80 S.Ct. 630, 633, 4 L.Ed.2d 623, reh. denied 362 U.S. 972, 80 S.Ct. 953, 4 L.Ed.2d 901 [902] (1960). Individual members of this court have previously noted this concept. *Battlefield, Inc. v. Neely,* 656 P.2d 1154 (Wyo.1983) (Thomas, J., dissenting); *Matter of Voss' Adoption,* 550 P.2d 481 (Wyo.1976) (Guthrie, C.J., dissenting, with whom McClintock, J., joined). See also *Kindler v. Anderson,* 433 P.2d 268 (Wyo.1967).

*State v. Denhardt,* 760 P.2d 988, 990 (Wyo. 1988).

■ Burlington emphasizes that the geography of the area forecloses a conclusion that it engaged in activity on land adjoining the Waid group property, and for that reason it is not a proper defendant in an inverse condemnation proceeding. We are satisfied that the legislature intended to enact the requirement that the defendant take, damage, or diminish by "activities on adjoining land without the authorization of the owner of the land or before filing an action of condemnation * * *." Wyo. Stat. Ann. § 1–26–516. The summary judgment in favor of Burlington is affirmed because it did not conduct activities on adjoining land. Indeed, scenarios can be visualized in which it would be desirable to permit an inverse condemnation when the activities were conducted on a nonadjoining parcel, but the consequences of that situation appropriately should be addressed to the legislature rather than to this Court.

In addition, the circumstances of the flooding disclosed by the record appear to make it impossible for the proximate cause of the flooding to have been the culvert under the Burlington track. The water was blocked by the culvert under U.S. Highway 20, and the water backed up from that point. The actions of Upper Hanover and Lower Hanover in releasing water down Durkee Draw in the instance of a natural deluge could not have been reasonably anticipated by either WYDOT or Burlington, thus suggesting that neither owed a duty to the Waid group. We point to these as further bases for the grant of the summary judgment to Burlington, but our decision rests upon the construction of the statute.

■ We turn then to the claim of inverse condemnation against WYDOT, and we begin with the proposition that the Waid group and the State agree that the time limits for filing claims set forth in the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1–39–101 through 1–39–120, apply to a claim against the State for inverse condemnation. Both parties rely upon *Wyoming State Highway Dept. v. Napolitano,* 578 P.2d 1342, 1349 (Wyo.), *appeal dismissed* 439 U.S. 948, 99 S.Ct. 343, 58 L.Ed.2d 340 (1978), which predates both the Wyoming Governmental Claims Act and the Wyoming Eminent Domain Act. Even though reliance on *Napolitano* may be misplaced, we agree with the parties that the time limits articulated in

Wyo. Stat. Ann. § 1–39–113 apply. The relevant part of the statute provides:

(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(i) Not reasonably discoverable within a two (2) year period; or

(ii) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

■ Early in the course of pleading their case, the Waid group conceded that claims for damage arising out of the 1987 flood were time barred. They contend, however, that the recurrence in 1993 started the time limit to run again, and gave them two years from that incident in which to file the statutory claims. This contention does not comport with the plain language of the statute, in which the time for filing a claim is measured not from the date damage occurs, but from the date on which the "act, error or omission" occurs, or when it is discovered by a claimant. For purposes of this case, it may be assumed that the Waid group had no suspicion that anything was amiss with respect to the highway until water inundated the property in 1987.[1] There can be no doubt, however, that the Waid group discovered the "act, error or omission" which provided the basis of the claim of inverse condemnation no later than the date of the 1987 flood. The situation had not changed by 1993, and although that flood caused additional damage, there was no new "act, error or omission," or a fresh discovery of such that would cause the statutory time period to start anew. It is clear that the two year time for filing claims under the statute began to run in July 1987, and it had expired by the time the Waid group filed claims with WYDOT in February 1995.

We summarize our holding by reiterating the proposition that an action for inverse condemnation under Wyo. Stat. Ann. § 1–26–516 does not require demonstration of a permanent taking by a claimant. The plain language of the statute, however, makes it applicable only to conduct on adjoining land. The requirement that a claim be presented pursuant to the procedure established by the Wyoming Governmental Claims Act is applicable to inverse condemnation actions, and the claim must be filed within two years of the "act, error or omission" giving rise to the claim. The Findings of Fact and Order Granting Defendants' Motions for Summary Judgment is affirmed, albeit upon different grounds than those presented by the district court.

---

1. In the initial complaint, the Waid group asserted that area residents requested a larger culvert when the State raised the level of the highway. The record, however, does not identify which area residents made that request, and, for that reason, we are willing to assume that no members of the Waid group were among them.