2001 WY 122

**Fern A. BAKER, Appellant (Plaintiff),**

v.

**Jerry G. PENA, Appellee (Defendant).**

No. 00–309.

Supreme Court of Wyoming.

Dec. 10, 2001.

Michael P. Reynolds of Quinn, Day & Barker, Prof. L.L.C., Belle Fourche, South Dakota; and David A. Bradsky, Rapid City, SD, Representing Appellant.

Kay Lynn Bestol of Sundahl, Powers, Kapp & Martin, Cheyenne, WY, Representing Appellee. .

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Fern Baker (the tenant) was injured when a board in the deck appurtenant to the residential premises she leased from Jerry Pena (the landlord) rolled underneath her. The tenant brought an action for damages against the landlord on two theories of liability. The district court determined there was no genuine issue of material fact and granted the landlord's motion for summary judgment. We agree with the district court that a genuine issue of material fact does not exist as to whether the tenant's claim fits within the fourth exception to the general rule of landlord immunity. However, we adopt Restatement (Second) of Torts § 362 (1965) to further define the fifth exception to the general rule of landlord immunity. On this basis, we affirm the district court's order in part, reverse it in part, and remand the case for proceedings consistent with this opinion.

## ISSUES

[¶ 2] The tenant presents this issue for our review:

1. Whether a genuine issue of material fact exists precluding summary judgment on [the tenant's] claims that [the landlord] had contracted to repair the premises and/or was negligent in making repairs.

The landlord sets the issue out as follows:

Under the common law rule of landlord immunity for tort liability in effect in Wyoming prior to July 1, 1999, a tenant cannot recover from her landlord for injuries arising from a failure to repair unless the landlord had first promised to make repairs. There is no evidence that [the] landlord ... promised or agreed to make repairs. May [the tenant] recover for injuries caused by the alleged failure to repair?

## FACTS

[¶ 3] The facts adduced from the record are examined in the light most favorable to the tenant consistent with our well settled jurisprudence. The evidence presented for our review is comprised of deposition materials and affidavits. This case arose out of a landlord/tenant relationship between the parties. In June of 1995, the tenant leased the premises for $250 a month subject to an oral lease. In the early morning hours of August 13, 1997, the tenant returned home from work after a brief stop at a local bar. She proceeded up the ramp to her deck, and the top decking board apparently rolled resulting in her injury.

[¶ 4] The tenant recalled four prior incidents in which either she or her social guests had fallen as a result of the deck's state of disrepair. First, in 1995 her granddaughter's leg went through the deck when a board broke. Next, in 1996 the tenant fell through a board that had broken on the ramp. A few months later, the tenant's friend fell through the deck when a board broke. Finally, in 1997 the tenant's sister fell through the ramp when two boards broke. The tenant stated that after each occurrence the landlord replaced the broken boards. The final incident was the only occasion the landlord could recall when he had been notified that someone had fallen as the result of the deck, and it was the only time he could recall being asked to repair the deck.

[¶ 5] On April 27, 1999, the tenant filed a complaint against the landlord for injuries

she suffered as the result of her fall. She contended the landlord was responsible for the maintenance and repair of the leased premises, including the deck. She also claimed he was negligent in the construction, maintenance, and repair of the deck. On May 15, 2000, the landlord moved for summary judgment and asserted that, as a landlord, he was immune from tort liability and the tenant's claim did not fit within one of the recognized exceptions to the general rule. On July 27, 2000, the district held a hearing on this matter. On August 29, 2000, it granted the landlord's motion for summary judgment, and this appeal followed.[1]

### STANDARD OF REVIEW

■ [¶ 6] Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶ 10, 25 P.3d 511, ¶ 10 (Wyo. 2001); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which has been asserted by the parties. *Williams Gas Processing—Wamsutter Company v. Union Pacific Resources Company*, 2001 WY 57, ¶ 11, 25 P.3d 1064, ¶ 11 (Wyo.2001). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Id.* We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Scherer Construction, LLC v. Hedquist Construction, Inc.*, 2001 WY 23, ¶ 15, 18 P.3d 645, ¶ 15 (Wyo.2001). We do not accord any deference to the district court's decisions on issues of law. *Id.*

1. This court notes the absence in the record of any district court analysis in its determination to grant the landlord summary judgment. A summary judgment analysis evident in the record would undoubtedly assist appellate review.

2. As we stated in *Flores v. Simmons*, 999 P.2d 1310, 1313 n. 1 (Wyo.2000), "On July 1, 1999,

### DISCUSSION

■ [¶ 7] At the time of the injury, Wyoming followed the common-law rule of landlord immunity for liability in most circumstances.[2] *Taylor v. Schukei Family Trust by and through Schukei*, 996 P.2d 13, 16 (Wyo.2000). As a general rule, immunity relieves the landlord of a duty to the tenant or the tenant's guests for dangerous or defective conditions of the premises. *Id.* The common law developed from the concept that "the tenant was the owner and occupier subject to all the responsibilities of one in possession and burdened with maintaining the premises in a reasonably safe condition to protect persons who came upon the land." *Ortega v. Flaim*, 902 P.2d 199, 202 (Wyo. 1995). However, Wyoming has recognized the following exceptions to the general rule of landlord immunity:

1. Undisclosed conditions known to lessor and unknown to the lessee which were hidden or latently dangerous and caused an injury.

2. The premises were leased for public use and a member of the public was injured.

3. Part of the premises was retained under the lessor's control, but was open to the use of the lessee.

4. Lessor had contracted to repair the premises.

5. Negligence by lessor in making repairs.

*Id.* (citations omitted); *see also Pavuk v. Rogers*, 2001 WY 75, ¶ 5, 30 P.3d 19, ¶ 5 (Wyo.2001). The tenant asserts the fourth and fifth exceptions are applicable and determinative of her claim. We will address each exception separately.

### A. Lessor Contracted to Repair the Premises

■ [¶ 8] In *Hefferin v. Scott Realty Co.*, 71 Wyo. 114, 254 P.2d 194 (1953), we

statutes governing residential rental property became effective. Those statutes set out the duties of owners and renters and could, perhaps, alter the existing law which governs the landlord and tenant relationship. Wyo. Stat. Ann. §§ 1–21–1201 to –1211 (LEXIS 1999)."

examined the common-law rules of landlord liability. In that case, a tenant sued her landlord for injuries resulting from the landlord's improper furnishing of ventilation in the leased premises. 254 P.2d at 194. The parties' lease did not contain any provisions which referenced an obligation on the landlord's part to make repairs. 254 P.2d at 195. We held that, in the absence of an agreement to the contrary, a landlord is not obligated to make repairs upon the leased premises during the lease period whether the defects existed at the time he leased the premises or occurred thereafter. 254 P.2d at 197. This is so even if the premises are in a dangerous condition. *Id.* This principle is based on the theory that a landlord should not be liable for defects in the leased premises where he has not made any warranty or contract as to the condition of those premises or as to the repair of defects and is guilty of no willful wrong or fraud. *Id.* Essentially, the duty to repair arises out of the existence of the contract to repair; therefore, the contract defines the extent of the duty. *Montelongo v. Goodall*, 788 S.W.2d 717, 719 (Tex.App.1990). In *Hefferin*, the tenant did not rely on a contract contained in the lease, but instead she alleged the landlord made a promise to properly install a new ventilation system. 254 P.2d at 197. In response to the tenant's claim, we held the landlord is under no obligation to make repairs unless such a stipulation is made a part of the original contract or any subsequent promise to make repairs is supported by consideration and not founded merely on the relation of the parties. *Id.* Sufficient consideration exists when a tenant, who is not bound to a term of tenancy, relies upon a landlord's promise to make repairs made to induce the continuation of the tenancy. *Id.* However, in *Hefferin*, the tenant agreed to a definite three-year lease term, and we concluded there was no new consideration present for a promise or contract. Thus, the promise made by the landlord was wholly gratuitous, and therefore the landlord could not be liable. *Id.* Moreover, we held that a landlord's agreement to make repairs must take the form of an express contract and should not be implied from the parties'

conduct. *Id.; see also Taylor*, 996 P.2d at 18.

[¶ 9] The resolution of this matter centers on whether there is a genuine issue of material fact as to the existence of an agreement to make repairs. The tenant argues there are three indications in the record which prove there was, in fact, a mutual agreement that the landlord would make repairs. First, the tenant speculated that Dale Stietz, her boyfriend at the time and a party to the lease, made an agreement with the landlord. However, she admitted that she did not have any personal knowledge of such an agreement, and Mr. Stietz did not recall one. A genuine issue of material fact would be present if either the tenant herself made an agreement with the landlord or she had personal knowledge of an agreement between the landlord and Mr. Stietz and did not have to resort to speculation to prove an agreement was made. Next, she points to the fact that the landlord responded in his deposition as follows:

Q. ... I guess I can just ask you. Whose responsibility was it to make repairs on the house?

. . . .

A. Okay. I—mine, I guess.

Q. ... Okay. So if she had a leak under the sink, or something like that, she'd call you and you'd come take care of it?

A. Yes.

Q. Okay.

A. I did. I don't know that it was really my responsibility, but I did—

The tenant contends this statement constitutes the landlord's admission that it was his responsibility to make repairs. On the contrary, these remarks hardly suffice as evidence of a required express agreement to make repairs or a promise supported by sufficient consideration.[3] *Taylor*, 996 P.2d at 18. There was no evidence to prove an express agreement was made or the repairs were made as consideration to induce the continuation of tenancy. Finally, the tenant attempts to argue a reasonable inference

---

**3.** An express agreement has been defined in *Taylor* as " '[a] contract whose terms the parties have explicitly set out.' " 996 P.2d at 18 (quoting Black's Law Dictionary 321 (7th ed.1999)).

may be drawn that an agreement existed because the landlord made repairs to the deck after each alleged incident. However, we have clearly held that an agreement may not be inferred from the conduct of the parties. *Id.*

■ [¶ 10] Importantly, the tenant's inference of a prior agreement is contradicted by direct evidence in both the landlord's and Mr. Stietz's affidavits. The landlord asserts he did not make an agreement with either the tenant or Mr. Stietz to make repairs to the deck or any other part of the house. Nor was it a condition of leasing the premises. Further, Mr. Stietz stated he did not recall a discussion with the landlord regarding fixing up or repairing the deck, and there was no agreement that the deck was to be repaired as a condition of leasing the premises. While Mr. Stietz's statement does not specifically preclude the existence of an agreement that the landlord would make general repairs to the premises, on summary judgment the landlord's direct testimony cannot be overcome by the tenant's inference to the contrary. *Blackmore v. Davis Oil Company,* 671 P.2d 334, 337 (Wyo.1983). The record presented for our review discloses the tenant's mere speculation versus the landlord's unequivocal denial of an agreement. To succeed on summary judgment, after the movant establishes a prima facie case, the burden shifts to the opposing party to show a genuine issue of material fact or present competent evidence of specific facts countering the facts presented by the movant. *Bender v. Phillips,* 8 P.3d 1074, 1077 (Wyo.2000). The tenant failed to contradict the affidavits of the landlord and Mr. Stietz and therefore did not satisfy her burden.

[¶ 11] The facts of this case closely resemble the facts in *Ortega,* 902 P.2d 199. In that case, a residential home was leased by the landlord to tenants through an oral lease with a bare bones commitment by the tenants to pay rent in return for the landlord's surrender of possession. 902 P.2d at 201. The parties agreed there was no understanding regarding repairs. The tenants' social guest sustained personal injuries when she fell down the stairs at the home. *Id.* In the absence of a contractual provision to repair,

we held the landlord had no duty to repair patent defects on the premises. 902 P.2d at 204. We affirmed the district court's grant of summary judgment. *Id.* In the same vein, we cannot discern the existence of a genuine issue of material fact in this case sufficient to withstand summary judgment on the fourth exception to landlord immunity.

**B. Negligence by Lessor in Making Repairs**

■ [¶ 12] The common-law rule of landlord immunity relied upon the premise that, if there was not a contract governing the landlord/tenant relationship, the tenant in possession of the property was in a better position to be aware of hazards and to undertake repairs. Therefore, absent a specific agreement otherwise, the landlord was not responsible for repairs. This court has consistently followed that rule in cases involving the extent of a landlord's contractual duties. *See Ortega,* 902 P.2d at 204; *Hefferin,* 254 P.2d at 197. However, when a landlord has agreed or covenanted to repair the premises during the tenancy, he has a duty to exercise reasonable care and is liable for negligence. *Brubaker v. Glenrock Lodge International Order of Odd Fellows,* 526 P.2d 52, 58 (Wyo. 1974).

■ [¶ 13] In the instant case, the tenant does not point to any evidence of a promise supported by sufficient consideration which would create a contractual obligation and open the door to the landlord's liability. Nor was there any evidence presented that, at the time the tenant leased the premises, the landlord promised to maintain the property in good repair. Hence, our discussion must turn on whether, under any circumstances, a gratuitous undertaking subjects a landlord to tort liability.

■ [¶ 14] *Brubaker* is the only Wyoming case which has directly addressed the viability of the fifth exception to landlord immunity—negligence in performing repairs. In that case, this court held landlord liability for negligent repair could arise because the landlord, pursuant to a specific agreement, moved and installed a stairway which collapsed causing Mr. Brubaker's injuries. We held the repairs and remodeling of the stairs

were undertaken as an inducement and consideration for the entry into the lease; therefore, the issue of the landlord's failure to properly perform the agreement was a proper issue to be determined by a jury. The question of a truly gratuitous undertaking of repairs by a landlord was not at issue in *Brubaker*. Therefore, we are faced with a question of first impression—whether a landlord is liable in tort for damages caused by a failed repair when (1) the landlord undertakes a repair with no contractual obligation to do so and (2) accomplishes the repair negligently and in such a fashion as to cause the tenant to believe the repair corrected a safety problem when it did not.

[¶ 15] Regarding negligent repairs made by a lessor, Restatement (Second) of Torts § 362 (1965) provides:

> A lessor of land who, by purporting to make repairs on the land while it is in the possession of his lessee, or by the negligent manner in which he makes such repairs has, as the lessee neither knows nor should know, made the land more dangerous for use or given it a deceptive appearance of safety, is subject to liability for physical harm caused by the condition to the lessee or to others upon the land with the consent of the lessee or sublessee.

This section clearly provides that a lessor who makes negligent repairs and has made the land more dangerous for use or given it a deceptive appearance of safety is subject to liability. This liability arises when tenants rely upon the deceptive appearance of safety and subject themselves or their social guests to danger. We adopt the Restatement standard for application to situations where a landlord gratuitously undertakes repairs and performs them negligently. Our adoption of this standard is harmonious with our prior case law. Until now, this court has not been presented with a comparable factual situation wherein a deceptive appearance of safety was potentially created by the landlord's conduct and where a contractual based analysis was not determinative. *See Brubaker*, 526 P.2d at 59.

[¶ 16] As an appellate court, we are not fact finders in the first instance. The district court's grant of summary judgment did not determine whether a genuine issue of material fact exists as to whether, viewed in the light most favorable to the tenant, the landlord's repair made the land more dangerous for use or gave the deck a deceptive appearance of safety. We therefore reverse the district court's grant of summary judgment and remand the case for such further proceedings as are appropriate and consistent with this decision.

[¶ 17] Affirmed in part, reversed in part, and remanded.